[Civ. No. S. C. 62. Second Appellate District, Division One.—June 3, 1938.]

In the Matter of the Estate of OCTAVIUS F. TRELUT, Deceased. FLORENCE H. TRELUT, Appellant, v. BEN B. JENKS, as Executor, etc., et al., Respondents.

718

Dailey S. Stafford for Appellant.

Donahue, Hynes & Hamlin for Respondents.

YORK, P. J.—By his last will and testament, Octavius F. Trelut (now deceased), bequeathed to his wife, appellant herein, all of his household effects and his automobile, and devised and bequeathed the entire residue of his estate to one Coles, in trust for the benefit of his said wife during her life and upon her death the trust to terminate and the *corpus* thereof to be distributed to Leon L. Trelut. It was further provided by the terms of said will, as follows: "I hereby specifically declare that it is my intention herein only to devise and bequeath my separate property and the interest in the community property of myself and my wife, of which I am entitled to dispose by will, and I expressly provide that my wife shall be entitled to her share of said community property, and also entitled to all of the rights and privileges given her herein."

The will was duly admitted to probate and during the course of administration, respondent Leon L. Trelut, who is the son of a brother of decedent, filed a petition for determination of heirship and interests in said estate, alleging that a dispute had arisen between him and appellant concerning their respective interests in said estate and under the will, and that appellant claimed the entire estate of decedent was community property. This petition came on for hearing in connection with the hearing on a first account current of executor and several other matters.

Thereafter the court found: "That the acts of Octavius F. Trelut and Florence H. Trelut from the time of their marriage clearly indicate that it was their intent and understanding that the respective properties obtained by them in any manner during the course of their marriage should be divided between them and thereupon become and remain the separate property of each of them respectively. That as property was accumulated by said Octavius F. Trelut and Florence H. Trelut during the period of their marriage, said properties were divided between them by agreement. That as a part of said division of said property it was agreed by and between said Octavius F. Trelut and Florence H. Trelut that the property so divided and placed in their respective names should become and remain the separate property of each of them. That the property standing in the name of the decedent Octavius F. Trelut at the time of his death and listed in the inventory and appraisement on file in the within estate, was the separate property of said Octavius F. Trelut and was not community property of said Octavius F. Trelut and Florence H. Trelut."

From that part of the judgment which was thereafter entered determining all of the property of the above estate to be the separate property of decedent, appellant takes this appeal and urges that the evidence is insufficient to sustain the finding above quoted. Appellant's opening brief was filed by Thomas B. Reed, and subsequent to the filing of respondent's reply brief there was substituted as attorney of record for appellant in the place and stead of said Thomas B. Reed, Dailey S. Stafford, who filed appellant's closing brief herein.

Said appeal has come to this court upon an engrossed bill of exceptions containing the following testimony elicited upon direct examination of appellant:

"I am the widow of Octavius F. Trelut, deceased. We were married at Santa Monica, in the county of Los Angeles, state of California, on December 2, 1888, and have lived together as husband and wife continually from that time up to the time of his death on November 6, 1934. That at the time of our marriage I had not quite $5000.00 in cash. That was all. Mr. Trelut had no property at that time. He had some money he had loaned to an older brother Leon Trelut. I don't know how much. This brother turned over two lots to O. F. Trelut from which he got $1500.00 and no more. He put this into the Temple ranch property. There was no house upon it. After receiving this sum and during our married life Mr. Trelut paid his relatives in the north on numerous occasions various sums of money, the amounts and dates of which I cannot remember. Mr. Trelut never acquired any money or property after our marriage by gift, devise or descent. All of the property standing in Mr. Trelut's name, at the time of his death, was acquired after our marriage. We never had any agreement of any kind that our estates should be divided or that what was in Mr. Trelut's name should be considered as his separate property. In October 1897 there was purchased solely in the name of Mr. O. F. Trelut from Mr. Hartshorn certain real property as an orange grove. This property is a part (approximately six acres) of the present ten acre orange grove now in the estate of O. F. Trelut. In December 1899 Mr. Trelut and I bought certain real property from Mr. Grijalva. This property was an orange grove. This property was purchased solely in the name of Florence H. Trelut. This was done so that each of us would have an orange grove. In January 1903 there was purchased the additional four acres of real property which with the six acres purchased in October 1897, now comprises the ten acre orange grove now in the estate of O. F. Trelut. I sold the orange grove standing in my name to H. H. Church in October 1909. I received for this orange grove I sold about $10,000 in cash and a note and mortgage back to me for $3,750. I put the cash in my savings bank account. The orange grove purchased in O. F. Trelut's name was not sold and is a part of the estate of O. F. Trelut. The real property in Covina, where I am now living and which I call the Home place, was purchased by us since our marriage solely in my name and now stands solely in my name. For more than twenty years last past I have had a separate commercial and separate savings account

upon which I alone could draw. For more than twenty years last past Mr. Trelut has had a separate savings account and a separate commercial account upon which he alone could draw. Any moneys or income I received from the real property standing in my name I deposited in my savings bank account. Any money or income that was received from the real property standing in the name of O. F. Trelut was deposited in the separate bank accounts of O. F. Trelut. I have now about $14,000 in my separate name in a bank account. Prior to October 1909 O. F. Trelut owed to the Covina Valley Savings Bank the sum of $3400.00 upon a promissory note secured by a mortgage on the present orange grove in the estate of O. F. Trelut. In October 1909 I used part of the proceeds of the sale of the orange grove which stood in my name, and which I call the Church property, and loaned to O. F. Trelut $3400.00 to pay off the above mentioned bank mortgage, and O. F. Trelut gave me a promissory note in the sum of $3400.00 secured by a mortgage on the present orange grove in the estate of O. F. Trelut. Since 1909 that note and mortgage has been renewed from time to time. I later advanced Mr. Trelut more money and the loan was increased, on September 18, 1923, to $4800.00, with the same property as security. Since 1909 O. F. Trelut regularly paid me interest on the $3400.00 note and since 1923 has regularly paid me interest on the $4800.00 note. These payments of interest have been deposited in my savings bank account. The loan in the sum of $4800.00 was last renewed on October 21, 1932. Since our marriage no property owned by either of us stood of record in our joint names. All property held by each of us stood of record in the individual name of O. F. Trelut or of Florence H. Trelut. When certain bonds of the Mortgage Guarantee Co. were purchased by us a total face value of $20,000 was acquired of which amount $10,000 were placed in Mr. Trelut's name and $10,000 were placed in my name. The $10,000 placed in my name were purchased with my separate funds. The first property to be purchased by us after our marriage was what we called the Temple property; that was June 11, 1890. Mr. Trelut used the $1500.00 that he got from his brother to pay on that. There was no house on the property and we both helped to pay for building the house.'' Appellant further testified on cross-examination: ''We never had any written agreement of any kind that our estates should be divided or that which was in Mr. Trelut's name should

be considered as his separate property. On November 1, 1934, at the same time that O. F. Trelut executed his last will and testament which is being probated in this proceeding, I executed a mutual will and testament which was exactly the same as that executed by O. F. Trelut at said time, except that I devised and bequeathed all of my property to J. D. Coles to hold in trust during the lifetime of O. F. Trelut, and to pay to him the income during his said lifetime, and at the death of O. F. Trelut to transfer the property to Leon L. Trelut. About a month or two after the death of O. F. Trelut I destroyed the will I made on November 1, 1934. Since the death of O. F. Trelut I have executed and delivered to Thos. B. Reed, my attorney, a deed to an undivided one-half interest in the orange grove described in the inventory of O. F. Trelut's estate, to pay him for his services in connection with this estate. During the probate of this estate I filed a contest to the will of O. F. Trelut which I recently dismissed.''

Other than this, the only evidence adduced at the hearing was (1) that of Ben B. Jenks, executor of said estate, to the effect that Mr. and Mrs. Trelut had for many years separate commercial accounts in his bank; that he knew of the note of Mr. Trelut made in favor of Mrs. Trelut for $4,800 and that when interest was due thereon it was withdrawn from the account of Mr. Trelut and deposited to the checking or savings account of Florence H. Trelut; (2) that of Mr. Mullholland to the effect that he had known the Treluts for about thirty years; that he frequently visited at their home and had heard Mrs. Trelut on several occasions refer to the orange grove, being the same property which is now in the estate, as "Father's property", or "Father's grove", or "his property". "I never heard her refer to it as 'our property' or 'my property'. I once heard her say, 'I've got a note against father's property'. I also heard her say, 'I've got a note against "his property" ', referring to O. F. Trelut"; (3) the testimony of J. D. Coles, cashier of the Covina Valley Savings Bank to the effect that both Mr. and Mrs. Trelut had individual savings accounts in that bank.

The inventory, in addition to the orange grove, lists as assets of the estate a sum of money, $10,000 worth of bonds of the Mortgage Guarantee Co. (referred to in appellant's testimony), a Buick automobile and many shares of stock and bonds.

The judgment herein orders paid in the course of administration the claim of appellant for $4,800, plus interest from April 18, 1934, at 7 per cent, being the amount of the note secured by a mortgage on the orange grove included among the assets of the said estate.

Appellant urges that the finding, above recited, is directly contrary to the presumption established by section 164 of the Civil Code, while the evidence adduced and upon which the finding of separate property is based, is the very evidence upon which the code creates the community property presumption.

The right of husband and wife to make contracts is given by section 158 of the Civil Code: "Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might, if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying the confidential relations with each other, as defined by the title on trusts."

■ The sufficiency of the evidence is generally a matter for the trial court or jury, and the findings or verdict will not be lightly set aside. Following the general rule, a finding of a trial court that property is either separate or community in character is binding and conclusive upon the appellate court, if it is supported by sufficient evidence, or if it is based on conflicting evidence or upon evidence that is subject to different inferences. (3 Cal. Jur. Supp. 573.) ■ Further, a finding against a presumption is binding upon the appellate court (*Estate of Cronvall,* 220 Cal. 503 [31 Pac. (2d) 372]), unless the evidence to rebut it is so weak and improbable that the finding is without substantial support. (*Olson* v. *Cornwell,* 134 Cal. App. 419 [25 Pac. (2d) 879].) It is finally in each case a question of fact for the court or jury to determine whether the evidence is sufficient to overcome the presumption. The rule has been expressed as follows: "If, upon an analysis of evidence of substantial character, in the light of established rules, the mind of the trial judge, exercising reasonable discrimination, is satisfied that the naked presumption in favor of community property has been outweighed, then the findings of the trial court must prevail." (3 Cal. Jur. Supp. 575, citing *Estate of Tompkins,* 123 Cal. App. 670 [11 Pac. (2d) 886].) The presumption in favor of community property is disputable and may be controverted by

evidence "even by an inference tending to prove the contrary intention". (*Estate of Bryant*, 3 Cal. (2d) 58, 68 [43 Pac. (2d) 529].)

▮ The conduct of the husband and wife herein throughout the many years of their married life raises the inference that they arrived at an understanding that they would own no community property, but that whatever property was acquired by them in the name of the wife should be her separate property and likewise whatever property was conveyed to the husband and held in his name should constitute his separate property. There is nothing in the record which indicates that they ever held any property in their joint names, although they had many real estate transactions. It is shown that when they acquired the $20,000 worth of stock in the Mortgage Guarantee Co., one-half was conveyed directly to the wife and the other one-half directly to the husband. This is also true of all of their financial transactions—they each had separate bank accounts, and the wife loaned money to the husband, taking back his note secured by a mortgage on the orange grove which forms a part of the estate herein, and which was referred to by appellant as "father's grove". It should also be noted that another orange grove was acquired in the name of appellant so that "each of us would have an orange grove". Appellant testified that she and her husband had no agreement to divide their estates. In the case of *Kaltschmidt* v. *Weber*, 145 Cal. 596, at 599 [79 Pac. 272], it was said regarding an understanding between husband and wife that the earnings of the wife should be considered separate property: "Now, it may well have been the case that the husband could recall no conversation between them in which such an agreement was distinctly expressed. His testimony strongly indicates this condition of memory. And yet it might also be true that the fact that there was such an agreement was perfectly well understood between them. In such a case resort may be had to circumstantial evidence. The conduct and actions of the husband with respect to such earnings, indicating that he did not regard them as community property, or that he had relinquished to her the right to control and dispose of her receipts from that source, would be competent evidence and admissible to prove the agreement."

The testimony of appellant, notwithstanding her denial of an agreement between her and her husband, is sufficient to outweigh the presumption that decedent's estate was com-

munity property; also such testimony, together with the inferences fairly deducible from all the facts and circumstances surrounding the case, is sufficient to support the finding of the trial court that the property of decedent constitutes his separate property.

For the foregoing reasons the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 1, 1938.