[Civ. No. 18624.   Second Dist., Div. Three.   May 5, 1953.]

ERNEST V. BERRY, Respondent, v. BLANCHE
BEATRICE BERRY, Appellant.

Jerry Giesler and Harold C. Holland for Appellant.

John Hall for Respondent.

SHINN, P. J.—Plaintiff Ernest V. Berry and defendant were married on December 19, 1942. At the time plaintiff owned three precision grinding companies located in Los Angeles, Phoenix and Oakland, having a net *book* value of $82,996.42, had $10,000 in a vault, and was sole stockholder of a corporation of net worth of $38,405.09 *as shown on its books*. In November, 1948, plaintiff filed a complaint for divorce, and in April, 1949, defendant answered and cross-complained for divorce. By stipulation it was agreed the *net book value* of all assets as of December 31, 1949, was $238,-369.65. On January 5, 1951, by interlocutory decree defendant was granted a divorce on the ground of extreme cruelty and the decree divided the community portions of the stipulated assets as well as plaintiff's earnings from January 1, 1950, to date of decree. In lieu of an interest in specific assets defendant was awarded $39,410 payable in 36 equal monthly installments, all the community interest in the home in which she lived (value not stated), plus $150 per month for one year, plus one-half of plaintiff's net earnings from personal services from January 1, 1950, to December 31, 1951. Costs and attorneys' fees also were awarded. From

this decree defendant appeals, claiming insufficiency of each of the awards.

Basically, the problem facing the trial court was to determine the extent of the community interest in the accumulations during the marriage. The parties stipulated as to the book value of plaintiff's assets as of December 31, 1949, and further stipulated as to the amount of all gains after taxes made by plaintiff between January 1, 1943 and December 31, 1949. The court then found that all ordinary income of the various businesses was community property. It further found as to specific transactions involving sales of businesses and various assets what proportions, if any, of the gains were community. From these totals of community gains the court deducted the living expenses of the parties paid by plaintiff, and after finding that the remaining community gains had been reinvested and were included in the December 31, 1949, asset total, made the awards in question. Broadly, the question on appeal is whether the trial court proceeded properly.

Initially, defendant contends that the court's method was incorrect in that it should have started with the presumption all present assets were community property and subtracted only those assets plaintiff could trace back to his separate property owned at the time of marriage. She says plaintiff failed to produce such proof and that all the assets should have been found to be community property. She contends, in the alternative, that the court should have determined the proportion of the share of the community in the assets as of the time of trial, should have placed a value thereon and should have awarded her substantially more than half thereof in kind or in money.

According to the findings plaintiff at the time of marriage had assets of $131,401.51, consisting of his three plants worth $82,996.42, cash of $10,000 and ownership of a corporation worth $38,405.09; May 31, 1943, the plant at Phoenix was sold for $34,587.70 cash (including cash retained and machinery sold later), business earnings during 1943, after deducting taxes and living expenses, amounted to $30,552.12; April 25, 1944, plaintiff bought one parcel of land in Palos Verdes, paying $10,000 and giving security on the land for $20,000; April 30, 1944, he bought the Hard Chrome business and property for $91,000, paying $56,000 in cash, of which $35,000 was borrowed from a bank on his separate credit, and the balance in time payments; June 1, 1944, he sold the plant at Oakland for $40,000, retaining cash in the business

and receivables amounting to $29,617.16; August 1, 1944, he sold the Los Angeles plant for $170,000, receiving $35,000 in cash and an additional $50,000 in 25 monthly instalments; in this sale he retained cash and other assets of the business amounting to $33,521.79 and later repossessed the plant; his earnings, after taxes, and deduction of living expenses in 1944 were $13,245.56; on June 23, 1945, he sold Hard Chrome real estate for $40,000 cash. In 1944 and 1945 he bought additional unimproved land at Palos Verdes in the name of his corporation, Finance, Inc.; the total purchases amounted to 130 acres, three of which he sold for $13,000. According to the books of the corporation the land was carried at $120,611.69, road improvements at $19,614.19, building $64,782.51, and furniture was carried at $6,017.10. There were various sales of machinery belonging to the business owned by plaintiff at the time of marriage. It appears that Finance, Inc. held a mortgage of $18,437.50, secured by real estate, title to which was to be reconveyed to the corporation. In 1945 plaintiff's business sustained an operating loss of $7,715.76 and in later years earned operating profits as follows: 1946 — $2,955.92; 1947 — $8,379.59; 1948 — $4,370.54; 1949—$1,651.09. The action was tried in February of 1950. At that time the evidence did not show satisfactorily the gains resulting from the sales of plaintiff's several businesses and his other transactions. In May, 1950, the cause was reopened for the appointment of a referee to take an accounting of the transactions in property. In September, 1950, the parties stipulated as to the amounts and sources of gains as they are set out in the accompanying table, and a referee was not appointed.

All the major figures as to sales we have used were based upon book values of property sold and actual sales prices. Defendant points out that there were total gains to December 31, 1949, of $167,234.36, whereas there was a gain in book values of only $116,968.14. She says that this leaves unaccounted for $50,266.22, and it appears to be her contention that the plaintiff had concealed assets in that amount.

The court found plaintiff had not concealed any assets and defendant has not successfully challenged this finding. It would serve no purpose to review the arguments upon this point. If the findings as to community gains are sustainable it is immaterial whether plaintiff has accounted for all the assets which belonged to his separate estate.

The accompanying schedule* is explanatory of the findings as to the accumulations of community property. The item ''Business and Salary Income'' was arrived at by treating as community earnings the net from business operations and salary income to December 31, 1949, of $79,058.75 and deducting therefrom living expenses of $35,134.59.

The case was tried on the theory that the value of plaintiff's services was the major factual question to be determined. Plaintiff devoted all his time to the business and the court found all the earnings of the business were due to his ser-

*Sources and Court's Allocation of
INCOME EARNED AFTER MARRIAGE
(Jan. 1, 1943—Dec. 31, 1949)

| Source | Amount | Separate Property | Community Property | Calculated Per Cent Community |
|---|---|---|---|---|
| 1. Business and Salary Income | $43,924.16 | | $43,924.16 | 100 |
| 2. Gains realized after marriage on sales of machinery and equipment | | | | |
| (a) Acquired before marriage | 17,829.95 | 17,829.95 | | None |
| (b) Acquired after marriage | | | | |
| (1) Hard Chrome machinery and equipment | 11,566.02 | 7,711.02 | 3,855.00 | 34.19 |
| (2) Other machinery and equipment | 2,639.72 | 2,139.72 | 500.00 | 18.56 |
| (c) Repossessed machinery | 2,461.36 | 2,051.36 | 410.00 | 16.66 |
| 3. Gain on sale of Hard Chrome real property | 15,762.36 | 13,762.36 | 2,000.00 | 12.68 |
| 4. Interest Income | 14,075.21 | 12,075.21 | 2,000.00 | 14.21 |
| 5. Gain on repossession of Los Angeles plant | 23,238.64 | 19,738.64 | 3,500.00 | 15.06 |
| 6. Gain on sale of Oakland plant | 21,390.01 | 18,890.01 | 2,500.00 | 11.7 |
| 7. Gain on sale of Phoenix plant | 14,355.93 | 12,855.93 | 1,500.00 | 10.45 |
| Totals | $167,234.36 | $107,045.20 | $60,189.16 | |

NOTE: Sources and amounts are per stipulation of the parties. Allocations are per the court's findings. Per cent Community is calculated from the findings.

Stipulated Book Net Worth
December 31, 1949

Precision Engineering Company .......... $ 50,220.52
Finance, Inc. (Pers. Corporation) ....... 188.149.13

Total Book Value .................. $238,369.65
Community Share of Book Values .... 60,189.16
Per Cent Community share of Assets as of December 31, 1949 ............... 25.25035%

vices and were therefore community property. This finding was definitely favorable to defendant. The method used was a proper one.

In the leading case of *Pereira* v. *Pereira*, 156 Cal. 1 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A.N.S. 880], a rule was declared for the ascertainment and allocation of separate and community interests in gains where a husband at the time of marriage is operating a business which is continued after marriage. The court should award the husband "the reasonable gain to the separate estate from the earnings properly allowable on account of the capital invested." The community interest consists of the share of the gains attributable to the personal character, energy, ability and capacity of the husband where he has contributed his personal services to the operation of the business. This method of allocation has been followed in all the later cases where it was necessary to apportion interests in a business owned and operated by the husband at the time of marriage. (*Estate of Gold,* 170 Cal. 621 [151 P. 12] ; *Witaschek* v. *Witaschek,* 56 Cal.App.2d 277 [132 P.2d 600] ; *Cozzi* v. *Cozzi,* 81 Cal.App.2d 229 [183 P.2d 739] ; *Stice* v. *Stice,* 81 Cal.App.2d 792, 797 [185 P.2d 402].)

Without discussing the applicability of the foregoing rules defendant contends that where profits and gains of a husband's business owned before marriage, which are due to his personal services, are retained in the business and commingled with its funds, any property purchased with the commingled funds becomes community property. Upon this theory she claims community ownership of all presently owned property consisting of Precision Engineering Company and the Palos Verdes land standing in the name of plaintiff or his corporation. This theory calls for abrogation of the rule of the Pereira case as it applies to the facts found by the trial court. The present case illustrates the wisdom of that rule. Less than six years elapsed between the marriage and the separation of the parties. All the present assets were derived from plaintiff's separately owned business and his personal services. According to the stipulation they are worth a minimum of $238,000 and they represent plaintiff's lifetime earnings. The court, in applying the rule of the Pereira case, had no difficulty in evaluating plaintiff's services. It favored the community by allocating to it all earnings of the businesses and a substantial share of gains on sales, without making any deduction therefrom of a share as compensation for the use of plaintiff's valuable plants. It will be noted that by far the greater part of gains from sales came from sales of properties

owned by plaintiff before marriage. All the evidence on the subject was to the effect that the increases in value of the plants, machinery and equipment were due to increased demand for machine tools and manufacturing facilities following our entry into the war. ▮ Increases due to that cause alone would be plaintiff's separate property. (Civ. Code, § 163; *Logan* v. *Forster,* 114 Cal.App.2d 587, 600 [250 P.2d 651]; *Van Camp* v. *Van Camp,* 53 Cal.App. 17 [199 P. 885].) Defendant urged upon the trial court that something should be allowed the community for plaintiff's efforts in making the sales and that the community had an interest in the property. We must presume that in making allocations to the community of shares of the gains the court took into consideration all proper factors, including any interest which the court may have believed the community had in the property itself and also the value of plaintiff's services in making these sales. It is at once apparent that the result reached was far more just and reasonable than would have been an award to defendant of the major share of plaintiff's business and the assets of his wholly owned corporation.

Appellant in her briefs does not recognize the existence of the rule of the cases we have cited and upon which the trial court made its determination of the property rights. She has cited many cases which applied the general rule that property purchased with commingled funds will be deemed community property in the absence of a clear showing that it was acquired with separate funds. In none of them would the rule pertaining to a separately owned going commercial business have been applicable. *Falk* v. *Falk,* 48 Cal.App.2d 762 [120 P.2d 714], upon which defendant chiefly relies is not in the category of the commercial business cases. In that case a physician had some $150,000 at the time of his marriage. During 21 years of married life his net business earnings were about $161,000. In allocating the community property the court found that his separate funds and his earnings were so inextricably mixed that it was impossible to trace either into specific properties owned at the time of trial. Nevertheless the trial court awarded him securities of the value of $48,000 upon the theory that he had owned other securities of that value at the time of his marriage. The judgment was ordered modified by awarding these securities to the community. ▮ This was merely the application of the general rule under which property purchased with commingled earnings of husband and wife (*Truelsen* v. *Nelson,* 42 Cal.App.2d 750, 754 [109 P.2d 996]), or other commingled community and

separate property, not clearly capable of segregation will be deemed community property. (*Fountain* v. *Maxim*, 210 Cal. 48, 51 [290 P. 576]; *Buehler* v. *Buehler*, 73 Cal.App.2d 472 [166 P.2d 608].) All the other cases on the subject cited by defendant fall into the same category. They were all cases in which the evidence did not furnish a satisfactory basis for the segregation of separate and community interests. The rule of the Pereira case presupposes that it is feasible for the court to evaluate the services rendered to a going commercial business by the husband or wife for the benefit of the community. When this can be done satisfactorily there is a basis for segregation. As said in *Faust* v. *Faust*, 91 Cal.App. 2d 304, 309 [204 P.2d 906]: ''There is both a community and a separate interest in property purchased with separate and community funds where each contribution is clearly ascertainable. (*Miller* v. *Brode*, 186 Cal. 409, 413 [199 P. 531].)'' (See 3 Cal.Jur. 10-Yr. Supp. § 40, p. 524; *Vieux* v. *Vieux*, 80 Cal.App. 222 [251 P. 640]; *Estate of Caswell*, 105 Cal. App. 475, 482 [288 P. 102].) The court found there was no commingling of separate and community funds. This was true in a legal sense inasmuch as the interest of the community in the funds could be satisfactorily established.

The method employed by the court was a proper one. The parties both produced extensive testimony by accountants. Their respective theories were expounded at length both orally and in writing. ▮ The findings as to the amount of community property may not be disturbed. They were based upon conflicting evidence and inferences and defendant has not shown them to be in error. (*Todd* v. *McColgan*, 89 Cal. App.2d 509, 514 [201 P.2d 414].)

After the evidence was in defendant applied for the appointment of appraisers to value all the properties in question, as of the time of trial. The court expressed its willingness to have appraisals made or to receive evidence of present values should it become necessary. It would have become necessary only in the event the court had determined that defendant should be given a cash award or an allotment in kind based upon the present value of the community interest. The court was not required to make such an award. The case had been tried upon the basis of book values. The book values at the time of the marriage amounted to only $82,996.42 for the plants, and $38,405.09 for the Finance, Inc. assets, a total of $121,401.51. The plants and their equipment were sold as set out above for more than $300,000. It is clear, then,

that the book values as of the time of the marriage were far below actual values or that the actual values increased greatly due to the state of war, or that both factors contributed to the great difference between the sales prices and the values as shown on the books. There were good reasons for not ascertaining the present value of the assets. A sufficient one is that the method employed by the court for determining the extent of the community interest was the proper one and the only one available in view of the evidence and the theory on which the case had been tried. In addition, if increase of actual values above the book values at time of marriage had been shown, it would have been necessary to ascertain the actual values at the time of marriage in order to determine the value and extent of plaintiff's separate interest. No evidence was given or offered as to the actual original values. Moreover, there is merit in plaintiff's contention that defendant withdrew her request to have the court take evidence as to the actual value of the remaining assets.

Subsequent to the taking of evidence, defendant made a motion to reopen the trial and for leave to amend her cross-complaint by adding a cause of action for adultery to the cause of action for cruelty. She stated in her affidavits that she had recently been to the home where she and plaintiff had lived and discovered that there was another woman and a baby living in the home with plaintiff. Affidavits were filed by and on behalf of plaintiff that long before the trial defendant had accused plaintiff of having illicit relations with the woman in question. Defendant's own testimony on the first day of the trial lends support to these averments. The trial court concluded from the affidavits that insufficient diligence had been shown and that the application came too late. We cannot say that denial of the motion was an abuse of discretion. There was undisputed evidence that plaintiff had been guilty of extreme cruelty, and it is clear from the record that the parties expected a divorce would be granted to defendant upon that ground. Defendant was entitled to receive more than one-half the community property whether the ground was extreme cruelty or adultery. She contends that if the court had found plaintiff guilty of adultery she would have received a greater award than was made on the finding of extreme cruelty. We doubt that she is correct in this assumption. It is not true as a matter of law, nor do we know it to be a fact, that the courts are more lenient with husbands who inflict severe physical injuries upon their wives than

with those who are found out in adultery. Not only was there no abuse of discretion in denying the motion, but under the circumstances there has been no showing here of prejudice.

■ Defendant claims insufficiency in the award of a share of the community property, and also in the award of support of $150 a month for the period of one year, plus one-half of plaintiff's net earnings for his personal services from January 1, 1950 to December 31, 1951. Of the community property, valued at $60,189.16, defendant was awarded approximately two-thirds, or $39,410. This division, in our opinion, was equitable and fair to defendant. There is less to be said for the award of support. However, defendant is an able-bodied woman, 46 years of age, and a competent stenographic secretary. Before her marriage she had been steadily employed at a salary of $250 per month. The marriage had not been of long duration. In the later years plaintiff's business was not prospering. All these conditions considered, and in view of the division of community property, support in the amount of $150 per month for one year, plus one-half of plaintiff's income from personal services for two years, while moderate, was not so unreasonably low as to evidence an abuse of discretion.

By the interlocutory decree defendant's present counsel were awarded $5,000 as attorneys' fees. This was in addition to the sum of $750 awarded to her former counsel. The award is claimed to be inadequate in view of the vast amount of work involved in preparing and presenting defendant's case. If we were to agree that a larger allowance would have been reasonable, this would not mean that we would be justified in saying that the award was so inadequate as to be subject to revision. ■ The trial court has a broad discretion in such matters. (*Heck* v. *Heck*, 63 Cal.App.2d 470, 476 [147 P.2d 110] ; *Westphal* v. *Westphal*, 122 Cal.App. 388 [10 P.2d 122].) Counsel were awarded $3,000 attorneys' fees on the appeal. There is no appeal from this order.

The order denying motion for a new trial being nonappealable, the purported appeal therefrom is dismissed; the judgment is affirmed.

Wood (Parker), J., concurred.

Vallée, J., did not participate.

A petition for a rehearing was denied May 27, 1953. Vallée, J., did not participate therein. Appellant's petition for a hearing by the Supreme Court was denied July 2, 1953.