[Civ. No. 10282. Third Dist. Feb. 16, 1962.]

Estate of CLYDE E. HELTCEL, Deceased. JANE HELT-CEL, Claimant and Appellant, v. WELLS FARGO AMERICAN TRUST COMPANY, as Trustee, etc., et al., Defendants and Respondents.

Ira B. Langdon for Claimant and Appellant.

Brobeck, Phleger & Harrison, Darah & Ellis and Mazzera, Snyder & DeMartini for Defendants and Respondents.

SCHOTTKY, J.—Clyde E. Heltcel died on February 16, 1960. Surviving him are his widow, Jane, and a niece, Lucymae Heltcel Allen.

His will dated October 29, 1959, was admitted to probate. By it the deceased bequeathed his entire estate to the American Trust Company (now Wells Fargo Bank), as trustee. By the terms of the will Jane was to receive a minimum of $200 a month for life. Upon her death the balance of the trust was to be paid to the Linden Lions Club which was to use the money to create a scholarship fund. Thereafter Lucymae Heltcel Allen filed a petition to determine the interests in the estate. On August 4, 1960, Jane Heltcel filed a petition in which she asked the court to determine the community and separate property. The bank and the Linden Lions Club filed statements of interest.

After a hearing the court entered its judgment in which it was determined that all of the property in the estate was separate property except some farm equipment appraised at $1,731 and the proceeds of some hospital insurance appraised at $1,383.48. The court reserved jurisdiction to determine the interests in the estate until the termination of the trust.

The record discloses that the property determined to be separate property of the deceased consisted of the following:

| | | |
|---|---:|---:|
| 1. Savings account in the sum of... | | $24,552.42 |
| 2. Note of Alexander and Marie Sambado | $26,628.00 | |
| Accrued interest | 517.76 | 27,145.76 |
| 3. Real property | | 55,000.00 |
| 4. Miscellaneous items | | 1,295.71 |
| | | $107,993.89 |

The record discloses that in 1940, prior to his marriage, the deceased inherited two parcels of property from his mother. One parcel, less 8.20 acres, is the parcel remaining in the estate. It was appraised at $55,000. This property was improved prior to the marriage with a small four-room house. After marriage a laundry room and a place for a deep freeze were added. Some improvements were also made to the land.

The second parcel was sold to Alexander Sambado. The deceased received $8,527.42 in cash and a note for $33,285 on October 13, 1958.

On July 17, 1959, the deceased received $16,661.19 from his brother's estate.

At the time of his death decedent had a savings account. The first entry, dated October 13, 1958, was $8,527.42. The second deposit, dated July 17, 1959, was for $9,000. The third deposit, dated October 7, 1959, was for $6,657, which was the

amount of principal received on the annual payment of the Sambado note.

 Jane Heltcel, the widow, has appealed from the judgment. Appellant outlines her position as follows:

"The question involved is what portion of the property originally separate property, becomes community property where the husband devotes his entire time to its development and improvement during 15 years of marriage?

"It is the contention of Appellant that where there has been an increment in the value of the original separate property, a portion thereof becomes community property under the facts of this case and that the trial court erred in its failure to recognize this."

Section 163 of the Civil Code provides: "SEPARATE PROPERTY OF THE HUSBAND. All property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is his separate property."

In *Estate of Jenkins*, 110 Cal.App.2d 98 [242 P.2d 107], the court, quoting from the earlier case of *Estate of Trelut*, 26 Cal.App.2d 717 [80 P.2d 147], said at page 99: " 'The sufficiency of the evidence is generally a matter for the trial court or jury, and the findings or verdict will not be lightly set aside. Following the general rule, a finding of the trial court that property is either separate or community in character is binding and conclusive upon the appellate court, if it is supported by sufficient evidence, or if it is based on conflicting evidence or upon evidence that is subject to different inferences. (3 Cal.Jur. Supp. 573.) Further, a finding against a presumption is binding upon the appellate court (*Estate of Cronvall*, 220 Cal. 503 [31 P.2d 372]), unless the evidence to rebut it is so weak and improbable that the finding is without substantial support. (*Olson* v. *Cornwell*, 134 Cal.App. 419 [25 P.2d 879].) It is finally in each case a question of fact for the court or jury to determine whether the evidence is sufficient to overcome the presumption. The rule has been expressed as follows: "If, upon an analysis of evidence of substantial character, in the light of established rules, the mind of the trial judge, exercising reasonable discrimination, is satisfied that the naked presumption in favor of community property has been outweighed, then the findings of the trial court must prevail." (3 Cal.Jur. Supp. 575, citing *Estate of Tompkins*, 123 Cal.App. 670 [11 P.2d 886].) The presumption in favor of community property is disputable and may be

controverted by evidence "even by an inference tending to prove the contrary intention." (*Estate of Bryant*, 3 Cal.2d 58, 68 [43 P.2d 529].)' "

Appellant relies heavily on the rule stated in *Berry* v. *Berry*, 117 Cal.App.2d 624 [256 P.2d 646], and a number of similar cases. She quotes from *Berry* v. *Berry*, at page 626, as follows: "Basically, the problem facing the trial court was to determine the extent of the community interest in the accumulations during the marriage. The parties stipulated as to the book value of plaintiff's assets as of December 31, 1949, and further stipulated as to the amount of all gains after taxes made by plaintiff between January 1, 1943 and December 31, 1949. The court then found that all ordinary income of the various businesses was community property. It further found as to specific transactions involving sales of businesses and various assets what proportions, if any, of the gains were community. From these totals of community gains the court deducted the living expenses of the parties paid by plaintiff, and after finding that the remaining community gains had been reinvested and were included in the December 31, 1949, asset total, made the awards in question. Broadly, the question on appeal is whether the trial court proceeded properly.

" . . . . . . . . . .

"The case was tried on the theory that the value of plaintiff's services was the major factual question to be determined. Plaintiff devoted all his time to the business and the court found all the earnings of the business were due to his services and were therefore community property. This finding was definitely favorable to defendant. The method used was a proper one.

"In the leading case of *Pereira* v. *Pereira*, 156 Cal. 1 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A. N.S. 880], a rule was declared for the ascertainment and allocation of separate and community interests in gains where a husband at the time of marriage is operating a business which is continued after marriage. The court should award the husband 'the reasonable gain to the separate estate from the earnings properly allowable on account of the capital invested.' The community interest consists of the share of the gains attributable to the personal character, energy, ability and capacity of the husband where he has contributed his personal services to the operation of the business. This method of allocation has been followed in all the later cases where it was necessary to apportion interests in a business owned and operated by the

husband at the time of marriage. (*Estate of Gold,* 170 Cal. 621 [151 P. 12] ; *Witaschek* v. *Witaschek,* 56 Cal.App.2d 277 [132 P.2d 600] ; *Cozzi* v. *Cozzi,* 81 Cal.App.2d 229 [183 P.2d 739] ; *Stice* v. *Stice,* 81 Cal.App.2d 792, 797 [185 P.2d 402].) ''

Respondents in reply do not dispute the rule as stated in the above-cited cases, but contend that said rule is not applicable to or determinative of the instant case because of a different factual situation. Respondents point out appellant admits that the decedent inherited from his mother and owned at the date of his marriage to appellant two parcels of real property generally referred to as the ''Home Place'' and the ''Waterloo Road'' place, and that he owned no other real property during their marriage. Respondents then state that ''The Supreme Court of California determined many years ago that crops produced from land separately owned, whether such crops be annual or perennial, constitute separate property, whether the owner or the spouse of the owner devotes his or her personal services to producing such crops.'' Respondents quote from *Estate of Pepper,* 158 Cal. 619 [112 P. 62, 31 L.R.A. N.S. 1092], at page 623, as follows: ''. . . Earnings, acquired by the exercise of the industry or skill of either husband or wife, are to be credited to the community. On the other hand, the products of land, separately owned by either spouse, and cultivated by either or both, become the separate property of the one owning the land.''

Appellant in discussing the *Estate of Pepper* stated that ''Over the years this case has been the subject of criticism (see Witkin Summary of California Law, 7th Edition, Volume 4, page 2725) and appears to be discredited at the present time.''

However, it is not necessary to rely upon *Estate of Pepper, supra,* to affirm the decree and judgment in the instant case.

The evidence is clear that two parcels of real property were inherited by the decedent about 1940 and that he received distribution of the same about 1942. He married the appellant in 1945. Thus, said parcels of real property were clearly separate property as of the date of his marriage to appellant. One of said parcels was sold in 1948 and the proceeds thereof remain in this estate. From said sale the decedent received over $8,000 in cash, which was deposited in the bank account hereinabove referred to, and the Sambado note listed in the inventory and appraisement. He also inherited over $16,000 cash from the estate of his brother. This was distributed to him in 1958. During his lifetime the decedent received one

principal payment on the Sambado note, together with interest due at that time.

We thus have in this estate property which clearly has its beginning in separate property. All of it was inherited. Most of it was owned prior to his marriage, and that which was not so owned was inherited thereafter. Under the statutes of California and the well-established law of this state all of said property was the separate property of the decedent.

Appellant contends that since the decedent worked on the property, derived a living therefrom, and then died with an estate more valuable than that owned by the decedent in 1940, the increase in value must have been due entirely to his effort. Appellant according to respondent reasons thusly: "In 1940 the property was worth $13,880.00 (according to her computations); appellant and decedent were married for 15 years. The property is now worth $96,812.00 (per inheritance tax appraisal of the remaining property and the sale price of the property sold in 1958). Therefore, there is community property—either $63,000.00 or $86,925.00, take your pick."

However, it is apparent from the record that the increased value of the property in the estate was the result of the increase in value of the real estate, a fact of which the court could take judicial notice. (*Holmes* v. *Southern Calif. Edison Co.*, 78 Cal.App.2d 43 [177 P.2d 32].) While appellant testified that decedent performed work on the farm which she said was worth $5,000 a year, there is no evidence whatever as to whether the farming operations resulted in any profit, or that there was any profit in excess of the living expenses of appellant and decedent. It is, of course, well settled that there is a presumption that expenses of the family are paid from the community earnings. (*Estate of Smith*, 86 Cal. App.2d 456 [195 P.2d 842]; *Huber* v. *Huber*, 27 Cal.2d 784 [167 P.2d 708].) As stated in *Van Camp* v. *Van Camp*, 53 Cal.App. 17 [199 P. 885], at page 25: ". . . In the absence of any evidence showing a different practice, and there is none, the rule is that the community earnings of husband and wife are chargeable with the family support. (*Estate of Cudworth*, 133 Cal. 462 [65 P. 1041].) Hence any amounts of money expended for such purpose by either spouse during the existence of the marital relation are presumed to have been paid out of the community estate."

Appellant was represented at the hearing by able and experienced counsel, and we have no doubt that if any evidence could have been produced to show that any part of the prop-

erty found by the court to be the separate property of the husband had been received from community property, or as a result of the earnings of the husband, such evidence would have been produced. The instant case was tried by a trial judge who because of his long residence in and his familiarity with conditions in San Joaquin County was in a good position to evaluate the evidence, and we are satisfied that his conclusion, "That the farming equipment and hospital insurance set forth in the Inventory on file herein is community property, and all other property in said inventory is separate property of said deceased," is supported by the record.

As stated in *Estate of Jenkins, supra*, "a finding of the trial court that property is either separate or community in character is binding and conclusive upon the appellate court, if it is supported by sufficient evidence, or if it is based on conflicting evidence or upon evidence that is subject to different inferences. (3 Cal.Jur. Supp. 573.)"

The judgment is affirmed.

Peek, P. J., and Pierce, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 11, 1962.