[Civ. No. 2493.   Fourth Dist.—June 3, 1941.]

BESSIE L. CATHCART, Appellant, v. A. GREGORY et al., Respondents.

Guthrie & Curtis for Appellant.

King & King for Respondents.

MARKS, J.—This is an appeal from a judgment entered on a stipulation of counsel for the respective parties made in open court in the presence of their clients and taken down by the court reporter, but not reduced to writing and filed with the clerk nor entered at length on the minutes of the court.

Plaintiff was a widow who lived at Houston Flats, in the mountains about twenty miles northerly from San Bernardino, on a tract of land containing about 280 acres, in which she owned a three-fourths undivided interest, and the Redlands Security Company a one-fourth undivided interest. A. Gregory was the president and principal stockholder of the corporation. He also owned a similar sized tract of land in the same vicinity.

Plaintiff became indebted to A. Gregory and the Redlands Security Company in the sum of $18,000. About April 20,

1931, she executed a deed of trust to secure the loan on her interest in the 280 acres of land with the Redlands Security Company as beneficiary.

In 1935, the Crest Forest County Water District was organized with A. Gregory and members of his family and his business associates acting as leaders in the movement. Plaintiff and the Redlands Security Company conveyed land to the trustees who subsequently conveyed it, with reservations, to the district on which a dam was to be built which would create a lake behind it. They also conveyed a strip of land 175 feet wide surrounding the lake. For a time plaintiff and A. Gregory were members of the board of the district. The dam was built largely by the use of federal funds and the lake was formed.

A controversy arose between plaintiff, the district, Redlands Security Company, A. Gregory and others over the use of the lake, the boat landings on it, the shore rights and other questions.

Plaintiff brought this action on May 13, 1938. She sought, among other things, to have her rights under her contracts declared; to have the indebtedness to the Redlands Security Company declared paid because of benefits accruing to it from her conveyances; to have other conveyances cancelled because of the alleged fraud of A. Gregory and others, and to recover damages for timber alleged to have been taken from her land.

The trial opened on the morning of July 7, 1938. Plaintiff was in court and was represented by three able and reputable attorneys. Evidence was taken until about noon on the following day. When the court reconvened in the afternoon it was suggested that a compromise of the action might be effected if the trial could be delayed. It was delayed and counsel went into immediate conference in a room adjoining the court room. Plaintiff did not attend the conference (except perhaps for a brief time) but sat in the courtroom during the time it lasted. It is admitted that one or more of plaintiff's counsel frequently consulted her during the conference on questions settled there. The conference was continued on the morning of July 9th under similar circumstances. Just before noon the attorneys returned into court

and in the presence of their clients announced a settlement of the case had been agreed upon.

One of the attorneys for plaintiff then addressed the court as follows:

"Mr. PARSONS: If your Honor please, after considerable negotiations we are ready to proceed in this manner; the plaintiff will now rest her case. We are about to rest, preparatory to entering into a stipulation.

"The plaintiff now rests.

"Mr. JAMES KING: All the defendants likewise rest.

"Mr. PARSONS: May the record show that the plaintiff, Mrs. Cathcart, is personally here in court, and that the defendant, Mr. Gregory, is also personally present in court.

"Now, we would like to stipulate that a judgment be entered in this matter, and do stipulate that a judgment·be entered in this matter in favor of the defendants, and that findings be prepared and a judgment be prepared in accordance with the understanding which we are about to state."

Then followed a clear and complete statement of the details of the settlement, after which the following occurred:

"Mr. JAMES KING: That stipulation as generally outlined, is stipulated and agreeable to all of the defendants, and findings and judgment will be prepared in accordance therewith, this being merely in the nature of a memorandum.

"Mr. PARSONS: We are willing to stipulate that in the absence of the judge now presiding, that any one of the judges of this court may find the judgment.

"Mr. KING: We stipulate to that.

"Mr. HUNSAKER: In case the parties are unable to agree upon a trustee, will it be stipulated that the Court—meaning any judge thereof—shall name the trustee?

"Mr. JAMES KING: Yes."

The minutes of the court for that day show the following, after the title of the court and cause:

"This being the time heretofore continued to for further trial in the above entitled action, plaintiff is present with her attorneys R. E. Parsons, Howell W. Richardson, Daniel M. Hunsaker, defendant A. Gregory being present with his attorneys James L. King and Harold King, all other defendants excepting the Security Title Insurance and Guarantee Co., being present by their attorneys, the said James L. King and

Harold King. The official reporter J. E. Rich is directed to take down the proceedings and the testimony herein.

"Plaintiff rests. All defendants present rest.

"Counsel for the respective parties offer to the court a stipulated judgment in favor of defendants with findings of fact and judgment to be entered in accordance with oral stipulations as presented herein in open court.

"Judgment as stipulated for defendants is ordered by the court."

About August 1, 1938, one of the attorneys for defendants reduced the oral stipulation for judgment to writing and delivered it to one of plaintiff's attorneys for plaintiff's signature. One acre of land containing plaintiff's dwelling, the springs from which she obtained her water, and a right of way for pipe lines conducting the water to the dwelling were to be released from the deed of trust and conveyed to plaintiff. These descriptions were left blank in the written agreement as plaintiff was to have the right to designate the exact descriptions of the properties she was to receive. The form of the agreement was approved by plaintiff's counsel but plaintiff neither furnished the descriptions nor signed the agreement.

At various times counsel for defendants attempted to get these descriptions from counsel for plaintiff and with the consent of her attorneys finally telephoned her in October, 1938. An affidavit recites that "plaintiff herself replied to affiant in said conversation that the surveys had been made and the descriptions had been completed and had been delivered to Mr. George McDonald, for the purpose of having Mr. McDonald deliver the same to affiant, and plaintiff expressed surprise that they had not already been delivered to affiant, and further suggested that affiant call Mr. McDonald personally upon the telephone, giving affiant McDonald's telephone number."

Defendants' counsel further stated in his affidavit that he made repeated unavailing efforts to get the descriptions, and in November, 1938, defendant A. Gregory employed a licensed surveyor to make the surveys and "that said surveyor made a survey thereof during the month of November, and delivered to affiant descriptions covering said property, together with a map showing the location thereof in accordance

with the said descriptions. That said surveyor informed affiant that the survey had been made and the descriptions prepared in accordance with the desires of the plaintiff, who was present at the time the same were made." Plaintiff raises no question of the correctness of these descriptions.

Counsel for defendants then prepared findings of fact and conclusions of law in accordance with the stipulation, served them on counsel for plaintiff and delivered them to a judge of the Superior Court of San Bernardino County.

About January 16, 1939, defendants' counsel was informed that plaintiff had discharged her prior attorneys and had engaged the counsel now representing her on this appeal.

About January 28, 1939, plaintiff served a notice of motion to be relieved from the stipulation of her attorneys made on July 9, 1938. An amended notice of motion was served about February 15, 1939. The trial judge denied the motion.

Findings of fact and conclusions of law and judgment were filed on April 5, 1939, and this appeal followed.

A number of conflicting affidavits were filed in support of and in opposition to the motion. As the trial judge denied the motion he resolved all conflicts in the evidence in favor of defendants so we have only summarized a portion of those affidavits supporting the order and have disregarded conflicts in them.

Plaintiff argues that the findings and judgment are contrary to the stipulation in two particulars. The first point of alleged departure concerns a payment of $500 from plaintiff to the Redlands Security Company under certain conditions, and the second point of alleged departure relates to the water rights to be conveyed to her.

The stipulation provides that plaintiff and the Redlands Security Company will convey the land owned by them as tenants in common, excepting the one acre, the springs and the pipeline right of way, to a trustee; that within nine months plaintiff or her nominee may obtain full title to the property by paying the indebtedness evidenced by the note secured by the deed of trust together with accrued interest and taxes, the payment of $250 per acre for approximately 55 acres representing the one-quarter interest of the Redlands Security Company and $500 as a portion of the expenses of that company in connection with this litigation.

The findings and judgment give exact force to this portion of the stipulation.

Plaintiff urges that she did not know of this provision in the stipulation requiring her to pay the $500 to the Redlands Security Company and did not authorize her attorneys to make it. We find the following in the affidavit of one of the counsel who represented plaintiff on July 9, 1938: "That affiant, together with other counsel representing plaintiff, informed her from time to time as to all matters that had been agreed upon or were in dispute with defendants and their counsel, and fully informed plaintiff as to all the terms and conditions of such stipulation prior to the time the same was entered into on July 9, 1938." It should be remembered also that plaintiff was in court when the stipulation was entered into and made no objection to any of its terms for several months.

Plaintiff argues that there is a judgment of $500 against her and that under it defendants can levy upon and sell her home and water rights. The judgment supports no such construction. Plaintiff will be required to pay the $500 only in case she or her nominee redeems the property from the trust. In case there be no redemption she will not have to pay this sum but the property will be sold, excepting the homesite, the springs and the pipeline right of way, to satisfy the note secured by the deed of trust. No money judgment was rendered against her.

As to the water right, the stipulation contains the following: "The Redlands Security Company will convey . . . (by) an unconditional release as to the water right, and by now I mean the water which is now developed from a spring, and which water has been developed and is now actually conveyed by means of a pipe line to the house of the plaintiff, and in addition thereto, there shall be granted to the plaintiff an easement for her pipeline through whatever land it is necessary over which to pass to reach from the spring, the source of water, to her home, so that the water may be delivered as it is now being done and has been for some time past."

The judgment is much more favorable to plaintiff in this respect than the stipulation. It orders the Redlands Security Company to convey by quitclaim deed a described .341 of an acre of land on which the springs from which plaintiff obtains her water are located, together with a described ease-

ment for her pipelines. This of course would convey the ownership of all water produced and to be produced from the springs.

Plaintiff contends that the trial judge committed prejudicial error in refusing to relieve her from the stipulation of her counsel and in entering judgment on that stipulation because section 283 of the Code of Civil Procedure provides that ''An attorney and counselor shall have authority: 1. To bind his client in any of the steps of an action or proceeding by his agreement filed with the clerk, or entered upon the minutes of the court, and not otherwise; . . . '' She argues that the oral stipulation made in court was not intended to represent the final agreement of the parties; that it was only intended to serve as a memorandum to be used in drawing a final agreement settling the controversy and was intended to be subject to modifications; that as there was no agreement filed with the clerk of the court and as the stipulation was not entered on the minutes of the court it was not binding upon her and could not be enforced.

Defendants argue that the stipulation was complete in every particular and meticulously set forth every detail of the compromise of the case according to the exact agreement of the parties; that it was taken down in shorthand by the court reporter who later transcribed his notes; that it was referred to in the minutes of the court and thereby virtually incorporated in those minutes; that it was acted upon by the trial judge and by the parties and therefore became a binding and enforceable agreement.

The quoted portion of the section of the Code of Civil Procedure has been construed by numerous cases, among which we cite the following: *Borkheim* v. *North British & M. Ins. Co.*, 38 Cal. 623; *Preston* v. *Hill*, 50 Cal. 43 [19 Am. Rep. 647]; *Merritt* v. *Wilcox*, 52 Cal. 238; *Smith* v. *Whittier*, 95 Cal. 279 [30 Pac. 529]; *McLaughlin* v. *Clausen*, 116 Cal. 487 [48 Pac. 487]; *Webster* v. *Webster*, 216 Cal. 485 [14 Pac. (2d) 522]; *McClellan* v. *State*, 119 Cal. App. 535 [6 Pac. (2d) 994]; *Jones* v. *Noble*, 3 Cal. App. (2d) 316 [39 Pac. (2d) 486]; *Skoglund* v. *Moore Dry-Dock Co.*, 11 Cal. App. (2d) 287 [53 Pac. (2d) 1001]; *Price* v. *McComish*, 22 Cal. App. (2d) 92 [70 Pac. (2d) 978]; *Beckett* v. *City of Paris Dry Goods Co.*, 26 Cal. App. (2d) 295 [79 Pac. (2d) 178];

*Fresno City H. S. Dist.* v. *Dillon,* 34 Cal. App. (2d) 636 [94 Pac. (2d) 86].

The earlier cases seem to construe the quoted provisions of the section with considerable strictness. However, there are well established exceptions to the rule recognized in the later cases.

In *Webster* v. *Webster, supra,* the Supreme Court said: "Such a stipulation made in open court constitutes 'not only an agreement between the parties but also between them and the court, which the latter is bound to enforce, not only for the benefit of those interested, but for the protection of its own honor and dignity'. (*Meagher* v. *Gagliardo,* 35 Cal. 602; 23 Cal. Jur. 811, sec. 2.) Nothing in section 283 of the Code of Civil Procedure militates against the binding effect of a stipulation entered into and executed by the parties in open court and duly reported in the proceedings of the trial. (Citing cases.) In *Smith* v. *Whittier, supra,* it is stated:

" 'The evident object of this section [sec. 283, Code Civ. Proc.] is that whenever the attorney shall enter into an agreement for the purpose of binding his client, there shall be *such a record thereof as will preclude any question concerning its character or effect, and that the extent of the agreement may be ascertained by the record,* if oral, that it shall be entered in the minutes, and if written, that it shall be filed with the clerk. "It is not intended to enlarge or abridge the authority of the attorney, but only to prescribe the manner of its exercise." (*Preston* v. *Hill,* 50 Cal. 53 [19 Am. Rep. 647].) The section *does not require a construction that in no instance shall an agreement which the attorney may make in behalf of his client be binding unless entered in the minutes of the court or filed with the clerk.* Its provisions have reference to executory agreements, and not to those which have been wholly or in part executed; and it was with reference to oral agreements of an executory character that the court said in its opinion in *Borkheim* v. *North British & M. Ins. Co.,* 38 Cal. 623, 628, [relied on by plaintiff herein] "of such agreements, therefore, there can be no *specific performance*".' "

We believe the facts of the instant case clearly bring it within the rule thus announced. There can be no question that the stipulation was actually entered into by counsel in open court. There can be no question of its exact terms, character and effect because it was taken down by the reporter

who transcribed his notes. It was acted on by the court and the parties, and to this extent became an executed and not an executory contract. Under these circumstances and the authorities cited we cannot conclude there was any abuse of discretion on the part of the trial judge in denying plaintiff's motion to be relieved from the stipulation and in entering judgment upon it.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 30, 1941.