56 Cal.App.2d 277 (1942)
FRIEDA WITASCHEK, Respondent,
v.
PAUL WITASCHEK, Appellant.
Civ. No. 13760. 
California Court of Appeals. Second Dist., Div. Two. 
Dec. 21, 1942.
 Stephen Monteleone for Appellant.
 Raymond E. Parr for Respondent.
 GOULD, J. pro tem.
 Defendant appeals from a judgment granting to his wife an interlocutory decree of divorce and awarding to her certain property, permanent alimony, attorney's fees and costs.
 As to the divorce itself it is obvious after examining the pleadings, the testimony placed before the trial court and the findings and judgment based thereon, that an appellate tribunal will not substitute its judgment for that of the trier of facts. Divorce was asked by each of the parties, the wife in her complaint, the husband in a cross-complaint. Each charged the other with extreme cruelty such as to cause great and grievous mental and physical suffering and anguish. Each elaborated the general charge of cruelty by page after page of particularized allegations, and the testimony protracted the recital of complaints to such a length that several hundred typewritten pages were required to contain the story of the marital infelicities of the parties. Out of this welter of opposing charges and counter-charges the trial court decided that plaintiff and her corroborating witnesses were entitled to credence, and that defendant's cross-complaint was not established by credible testimony. Findings of fact were drawn accordingly and a decree in plaintiff's favor was based thereon. In this situation of conflicting testimony, and with ample credible evidence to support the court's findings and judgment, it follows that this court will not interfere with the lower tribunal's resolution of the conflict.
 [1] Appellant urges, however, that even if respondent produced sufficient evidence to entitle her to a decree, nevertheless divorce must be denied her on account of the showing of recrimination made by appellant. ( 111, 122, Civ. Code.) This contention is concerned principally with charges that respondent became infatuated with one Evans, that she under an assumed name received endearing letters from him, visited him in jail, gave him money and presents, procured an attorney *279 for him, took automobile rides with him, went to cafes and places of amusement in his company, and finally climaxed her display of infatuation for him by visiting the marriage license bureau in Los Angeles in 1938 and there with Evans filing a notice of intention to wed.
 Mrs. Witaschek's explanation of this affair casts a different light upon it. As revealed by the testimony, she had filed a divorce action prior to the one here involved. An interlocutory decree was entered in her favor in the year 1931, and she made a property settlement agreement with her husband. But thereafter, in the year 1932, she and her husband became reconciled and lived together as man and wife, with the understanding, she contended, that the old divorce decree and property settlement were thereby terminated and set aside. Unknown to her, she testified, her husband, in contravention of his representations to her that the former divorce proceedings were terminated by their reconciliation, caused a final decree of divorce to be entered in 1936. When she learned of it in May, 1938, in her frenzy and grief and meeting Evans by accident, she acceded to his importunities, and believing that her marriage to Witaschek was at an end, proceeded to the marriage license bureau with Evans and there with him made application for a marriage license. Returning to her home the same day, and with time and opportunity to view the matter more reasonably, so she testified, she decided to go no further with the Evans affair, called him by telephone and so informed him. Instead she engaged the services of an attorney and filed an action against Witaschek to set aside the interlocutory and final decrees of divorce, a suit in which she was successful, thus restoring the validity of her marriage. At no time, she protested, had she been infatuated with Evans and never had she misconducted herself with him or any other man.
 Had the court believed appellant's rather than respondent's version of the Evans affair it might well be argued that there had been such a showing of recrimination as to defeat respondent's case and to warrant a denial to her of a divorce. Appellant's contention fails utterly, however, when the record before us is examined. The trial court found that all of appellant's charges against his wife were untrue, and that her recital expressed the truth. There was a direct conflict in the testimony which the court determined in favor of respondent, *280 and with that determination this court under firmly intrenched rules will not interfere. Under the findings of the trial court, supported amply by evidence, there was no recrimination, and such findings are compelling upon this court.
 In adjusting property rights the court apportioned to the wife her personal effects and certain specified items of household furniture, ordered the husband to pay her attorney's fees and costs (to none of which appellant makes serious objection); and further ordered the husband to pay obligations of the wife in the sum of $1,000 for household furniture to be purchased by her in the future, and in addition to pay to her the sum of $150 per month as permanent alimony during the wife's lifetime or until her remarriage, and to establish a trust fund of $10,000 as security for the payment of such alimony. To the payment of $1,000 for the purchase of furniture and to the establishment of the trust fund securing the alimony payments appellant makes strenuous objection.
 It appears that at the time of the marriage of the parties in Nebraska in 1916 appellant was possessed of considerable property. He had retired from active business in 1913, and after that date and during the entire period of the marriage he devoted his energies and activities to the investment and reinvestment of his money, now in mortgages and real estate, now in rentals and leases, now in stocks and bonds. There had been a marked increase in the corpus of his estate. At the time of the trial he held numerous parcels of real property, and stocks of more than $20,000 market value. In all his dealings there was no attempt by him to set up segregated accounts for separate and community funds; everything was commingled indiscriminately, and in some instances the one common bank account contained also large trust funds for his relatives. Confronted with this financial confusion, the court, exercising its constitutional powers, proceeded to apportion to each party a share of the holdings.
 As to all of the real properties, six different parcels, it was found that they were acquired by appellant either prior to his marriage to respondent or by inheritance, or with funds realized by appellant from the sale of properties owned by him before his marriage. They were accordingly declared to be his separate property and as such were awarded to him.
 With reference to the stocks and bonds, all of which at *281 the time of trial were held in the name of appellant, the court determined that securities of the worth of $10,000 constituted community holdings and the remainder were the husband's separate property. Accompanying this allocation the court made a special finding that appellant since his marriage to respondent had devoted the principal part of his time to trading in and buying and selling stocks, bonds and other securities. He was ordered to sell and liquidate sufficient of certain stocks designated by the court in its judgment to produce the sum of $10,000, and with said cash to establish a trust fund to be held as security for the payment of the $150 per month alimony ordered. It was provided that the corpus of said fund should be maintained at $10,000 during the lifetime of the wife, that the trustee thereof should be empowered to withdraw moneys from it to make good any defaults of appellant in payments of alimony, and that in event of the death or remarriage of respondent the trust should cease and its assets be divided equally between appellant and respondent, if living, or if either be then deceased to his or her heirs. Other provisions of the judgment provided for the complete administration of the trust so created.
 Appellant objects both to the court's determination as to the community character of certain of the property and as to the creation of the trust as security for the payment of the alimony. In both matters the lower court acted within the scope of its powers, and its decision must be upheld.
 [2] It is settled by numerous decisions in this state that even though the husband's business has been carried on by him before marriage, and his profits after marriage are derived from the same business or from the investment and reinvestment of funds which he held at the time of the marriage, yet the entire profits so realized are not necessarily separate property of the husband. The capital which the husband brings to the marriage partnership is his own separate property, but it is a question for the court to determine what portion of the profits thereafter arises from the use of this capital and what part arises from the activity and personal ability of the husband. That portion of the income due to the "personal character, energy, ability and capacity of the husband" is community property. (In re Gold's Estate, 170 Cal. 621 [151 P. 12]; Pereira v. Pereira, 156 Cal. 1 [103 P. 2d 488, 134 Am.St.Rep. 107, 23 L.R.A. N.S. 880]; In re Caswell's *282 Estate, 105 Cal.App. 475 [288 P. 102].) It therefore became the duty of the trial court to apportion to the community such share of the husband's earnings as was due to the latter's industry and skill after the marriage. The court heard the testimony, there is ample in the record to support its conclusion, and it does not appear that under the circumstances, and after a marriage life of twenty-five years, an apportionment of $10,000 as the community property interest in his earnings and profits worked any injustice upon appellant. The court's findings and judgment in this regard must be sustained.
 [3] Likewise the court's creation of the trust fund as security for the alimony payments rests upon ample authority and precedent. Such procedure is specifically provided for in section 140 of the Civil Code, and the court in this instance followed the admonition of that code's section 141 by resorting to the community property first in establishing the fund. Numerous cases approve the wisdom of the legislative enactment to render secure the divorced wife's support money, and in a very recent case (Smith v. Smith, 49 Cal.App.2d 716 [122 P.2d 346]--hearing denied by the Supreme Court) in a closely similar situation the trial court's action in ordering a brokerage account sold and the proceeds converted into a trust fund for the support of the wife and her children won the affirmation of the appellate tribunal. These well established principles are not at variance with the holding of cases such as McKannay v. McKannay, 68 Cal.App. 701 [230 P. 214], relied upon by appellant herein.
 [4] Appellant's final attack is directed to that portion of the court's order requiring him to pay respondent's bills in a sum not exceeding $1,000 for the purchase of household furnishings and furniture. It is to be borne in mind that it had been determined by the court that all the furniture and furnishings of the home place constituted community property, and the order for division of this portion of the common estate gave to the wife only the piano, statuary, bric-a-brac and personal belongings, and to the husband all the balance, "provided that the husband furnish to the wife other furniture at a cost of $1000." It is quite evident that the court, instead of making a pro rata division of the furniture of the home, allotted the bulk thereof to the husband, and in lieu of the share which the wife might normally expect she was given the right to purchase new furniture at *283 the husband's expense. Appellant contends that any attempt to compel the husband, though he may be the offending party, to pay to third parties obligations of the wife incurred in the purchase of furniture is beyond the power of the court, that section 139 of the Civil Code limits the authority of the court to provide suitable support money.
 To this contention respondent replies that the very portion of the judgment which is thus attacked was stipulated to by appellant's counsel. In furtherance of her position respondent has offered, and this court has received upon motion for diminution of the record, affidavits of the trial judge, respondent's counsel and the then attorney for appellant that at a conference of attorneys with the court in chambers it was stipulated and agreed by counsel on both sides that exactly such an order be made, that the form of the judgment and order was discussed and approved, and that attorneys for both sides verbally stipulated as to the provisions about the furniture. Indeed, as appears from the affidavit of the trial judge, the suggestion about the purchase of $1,000 worth of new furniture for the wife came from appellant's counsel, appellant himself being then present, that it would be to the advantage and convenience of appellant to buy the new furniture for his wife rather than have the court award to her additional items from the furnishings of the property which he was then using as a home. It is admitted that whatever stipulation in this regard was entered into was verbal only, was never reduced to writing and was never entered in the minutes of the court. For these reasons appellant urges that the stipulation is of no effect and can not be invoked in support of the disputed judgment, not binding the client because of lack of conformity to section 283, subdivision 1, of the Code of Civil Procedure.
 It is true that the code provision relied upon by appellant does impose exacting limitations upon the authority of an attorney to bind his client by stipulation, and early cases such as Preston v. Hill, 50 Cal. 43 [19 Am.Rep. 647], called for very strict compliance with the codal rule, but later pronouncements have indicated instances where the rule is relaxed, e.g., to vest the attorney with complete charge and supervision of the procedure to be adopted, the conduct of the trial and all cognate subjects, provided only the attorney does not impair, compromise or destroy his client's cause of *284 action or subject matter of the litigation without his client's consent (Zurich etc. Co. v. Kinsler, 12 Cal.2d 98 [81 P.2d 913]), in which latter case the court quotes with approval the pronouncement that the recital of powers of an attorney as contained in the code does not exclude all other powers. Also in Webster v. Webster, 216 Cal. 485 [14 P.2d 522], it was held that the section in question referred to executory agreements only, and not to those wholly or in part executed. "If under the terms of a mutual stipulation, which was only verbal," says the court, "one party has received the advantage for which he entered into it, or the other party has at his instance given up some right or lost some advantage, so that it would be inequitable for him to insist that the stipulation was invalid, he will not be permitted to repudiate the obligation of his own agreement, upon the ground that it had not been entered in the minutes of the court." (See, also, Cathcart v. Gregory, 45 Cal.App.2d 179 [113 P.2d 894].)
 Consideration of the principles enumerated in these cases, we believe, determines the present controversy. There is no doubt that the stipulation, oral only it is true, was entered into by appellant's counsel in the presence of appellant; that by such stipulation appellant himself obtained a valuable advantage by having the substantial portion of the community household furniture set aside to himself, that the court relied upon the stipulation and drew its decree accordingly. Appellant has never offered, and does not now offer, to relinquish the advantages he gained by the stipulation; he does not request the court to make a new division of the community furniture nor offer to turn back the lion's share which came to him as a result of the stipulation. Equity demands that appellant, seeking to retain the fruits of the stipulated agreement, be not allowed to repudiate the terms which he finds burdensome.
 The judgment is affirmed.
 Moore, P. J., and McComb, J., concurred.