[Civ. No. 24238.   Second Dist., Div. Three.   July 27, 1960.]

JOHNSTON, BAKER AND PALMER (a Partnership) et al., Respondents, v. RECORD MACHINE AND TOOL COMPANY (a Corporation) et al., Defendants; CARL FRANCIS BAKER, Appellant.

Carl Francis Baker, in pro. per., for Appellant.

Spray, Gould & Bowers for Respondents.

FORD, J.—This is an appeal by defendant Carl Francis Baker from a judgment, "in particular" from the portion thereof which provides that his "cross-complaints and/or counterclaims . . . are dismissed with prejudice." In addition, in his notice of appeal it is stated that he appeals from the minute order of the court denying his motion by which he sought to set aside the judgment. The position of the respondents is that the judgment was proper in that it con-

formed to a stipulation stated in open court in which the appellant joined.

The action was brought by Claude F. Baker and Oran W. Palmer as the surviving partners of the law firm of Johnston, Baker and Palmer. In their complaint were the following allegations: 1. On September 13, 1951, the defendants Record Machine and Tool Company, Carl Francis Baker and Oretta Mae Baker executed their promissory note in favor of the partnership in the sum of $5,000, which was payable upon demand. 2. To secure the payment of the note, "together with the payment of any additional sums due from defendants to plaintiffs," Record Machine and Tool Company executed a deed of trust upon certain real property. 3. The note evidenced an advance on attorneys fees and costs for representing defendants in certain litigation in Los Angeles County. The total amount due the plaintiffs is $11,778.81 and none thereof has been paid.

The appellant's "fifth amended answer and counterclaims" contained an admission that the note "evidenced advanced attorneys fees and costs paid to the plaintiffs" for representation in the Pageman litigation.[1] But it was denied that the deed of trust "ever secured anything but the note for $5,000." The appellant denied that any amount was due to the plaintiffs. It was further alleged that the plaintiffs had been guilty of certain misfeasance. The damages sought by the appellant and Oretta Mae Baker, as stated in the prayer, were in a total amount in excess of one million dollars.

When the matter came on for trial on July 18, 1958, the appellant represented himself. An attorney, Edward L. Condon, appeared on behalf of the defendant Record Machine and Tool Company. Mr. Condon indicated to the court that an amicable settlement had been reached. The agreement as stated to the court was, in substance, that the plaintiffs would have a judgment for $4,000 as against the defendants in full settlement of the case, each party to bear such party's own costs,[2] and that "the defendants and each of

---

[1] The pleading made reference to the report of that case on appeal, Record Machine & Tool Co. v. Pageman Holding Corp., 42 Cal.2d 227 [266 P.2d 1]. In his reply brief, the appellant refers to the case as reported in 132 Cal.App.2d 821 [283 P.2d 724]. See also Record Machine & Tool Co. v. Pageman Holding Corp., 172 Cal.App.2d 164 [342 P.2d 402].

[2] Mr. Condon stated in part: "It is further stipulated and agreed that the said four thousand will be the full, final judgment and settlement of the above entitled case. . . ."

them will dismiss any and all cross-complaints and/or counter-claims heretofore filed as a matter of record in the above entitled case.'' Stephen E. Wall, one of the attorneys for the plaintiffs, mentioned the matter of a mutual release. He then said, ''I suppose by dismissing with prejudice the counterclaims and the cross-complaint——,'' whereupon he was interrupted by Mr. Condon who stated, ''I think that will take care of it. Do you want to put in there that both plaintiffs and defendants will furnish dismissals with prej-udice?'' Mr. Wall replied, ''I think so.'' The $4,000 was to come from funds on deposit in the Bank of America at Taft, California. The court suggested that a transcript of the proceedings be prepared, whereupon the parties would sign it, and then the formal judgment would be prepared. Mr. Condon stated, ''Plaintiffs and defendants will sign the stipulation and agreement which we have dictated and then the formal judgment and dismissals.'' The following then occurred: ''MR. WALL: But we do have the understanding that this is a stipulation in open court; that of itself is de-terminative. MR. CONDON: That is correct. It is a stipulated judgment in open court that the plaintiffs have and recover from the defendants the sum of $4,000. MR. WALL: Will you please have your parties both acquiesce in that individually and as officers of the corporation? MR. CONDON: They will sign the stipulation. MR. WALL: I mean I would like to have them of record now. THE COURT: Mr. Baker, do you under-stand the stipulation that has just been dictated here? MR. BAKER: I do, sir. THE COURT: Is it agreeable and satisfactory to you? MR. BAKER: Well, let's see. Could I speak off the record? MR. CONDON: We will after we finish, Carl, but what the Judge wants to know now is: You understand this and you agree with everything that has been said here? MR. BAKER: I will answer his question yes. THE COURT: And how about you, Mrs. Baker, is it satisfactory to you, too? MRS. BAKER: Yes. THE COURT: I guess that will take care of it.''

The minutes of the court for July 18, 1958, with respect to the case are in part as follows: ''Counsel and parties retire to chambers and stipulate to judgment for the plaintiffs in the sum of $4,000.00 against the defendants each to bear their own costs. The Bank of America at Taft to pay to the plaintiffs the sum of $4,000.00 from the funds deposited pur-suant to the stipulation and upon such payment the plaintiffs

are to furnish full satisfactions [sic]' of judgment. The balance is to be paid to the defendants. Defendants' cross-complaint and counterclaim is dismissed. Counsel for the plaintiff [sic] is ordered to prepare the judgment."

After the lapse of a period of over eight months, on April 7, 1959, the plaintiffs filed a notice that on April 16, 1959, they would present their motion for an order for the entry of judgment *nunc pro tunc* as of July 18, 1958. In support of the motion, an affidavit of Mr. Wall was filed. Therein he stated, in part, that the reporter prepared a transcript of the proceedings of July 18, 1958, which was thereafter signed on behalf of the plaintiffs but that, the affiant was informed, the defendants Baker had refused to sign the transcript. He further stated that the Bank of America had paid the sum of $4,000 pursuant to the stipulation, that the plaintiffs had furnished full satisfaction of judgment, that the balance of $2,600 had been paid by the bank to the defendants, and that the plaintiffs had performed everything which they had agreed to do.

In opposition to such motion, the appellant filed his affidavit. Therein he stated, in part, that he did not agree to any judgment against him but did agree to pay, and had paid, $4,000 to the plaintiffs. He attached to his affidavit a copy of his letter of August 4, 1958, to the plaintiffs. He further stated that the note and deed of trust had not been returned to him. It is to be further noted that the appellant raised the question of the right of the attorney who signed the notice of motion to appear on behalf of the plaintiffs since "he is not an attorney of record in the above-entitled action."[3]

The motion of the plaintiffs was granted. It was ordered that the judgment, which was dated April 16, 1959, be entered *nunc pro tunc* as of July 18, 1958. In the judgment it was provided that the "cross-complaints and/or counterclaims of defendants . . . are dismissed with prejudice." The judgment was actually entered on April 20, 1959.

Thereafter, on April 30, 1959, the appellant filed his notice of motion for an order setting aside the judgment. That matter was set for hearing on May 12, 1959. In his affidavit in support of the motion, the appellant stated his belief that at the hearing on April 16, 1959, the judge, "busy with other

---

[3]The firm of Spray, Gould & Bowers had appeared for the plaintiffs at the time of the proceedings on July 18, 1958. The notice in question was given by "Spray, Gould and Bowers, By Arthur O. Aragon."

trial matters," did not "fully consider both sides in justice."
He again charged that the attorney who then appeared for
respondents "is not attorney of record for the plaintiffs."
He incorporated in his affidavit the affidavit he had filed in
opposition to the prior motion. He further stated that at the
time set for the trial of the case, July 18, 1958, the trial judge
determined that the trial would take at least 10 days and
the court would require a daily transcript at an estimated
cost of $1,500 or more. He asserted that the judge asked if
the appellant was prepared to pay the extra costs and jury
fees and he answered that he could pay the extra costs "if the
plaintiffs would release encumbrance on affiant's money de-
posited in the Taft Bank of America, or if his Honor would
give an ORDER [sic] required by the bank to release affiant's
money. . . . That affiant considered the health of his wife
who was under the doctor's care, could not pay the additional
costs not contemplated, and affiant agreed to pay Four Thou-
sand Dollars to the plaintiffs in addition to that he paid,
which would release affiant's property from the encumbrance
of action 649213, and affiant believed the action was dismissed
without prejudice to either side, that affiant did not under-
stand judgment would be given against him thereby perfecting
plaintiff's swindle." He further stated: "That on July 30,
1958, when affiant was informed that STEPHEN E. WALL was
preparing a judgment but had gone on vacation, affiant im-
mediately notice [sic] plaintiffs CLAUDE F. BAKER and ORAN
W. PALMER who are also attorneys of record in action 649213,
that affiant did not agree to judgment, that prior to accept-
ing payment of Four Thousand Dollars the plaintiffs CLAUDE
F. BAKER and ORAN W. PALMER and affiant agreed the action
649213 would be dismissed without prejudice [to] either side,
the plaintiffs did understand such agreement, and signed such
agreement, and signed satisfaction of such agreement, which
documents are in the file of action 649213.[4] That if plaintiffs

[4]In the clerk's transcript is an "AGREEMENT TO PAY CLAIMED FEES"
executed by all parties, the body of which is as follows: "On July 18,
1958, in Department 15, of the above named Court, the Honorable Judge
A. A. Scott presiding, it was agreed by and between the parties litigants,
that defendants pay plaintiffs FOUR THOUSAND DOLLARS ($4,000.) fees
claimed by the plaintiffs for their services in Los Angeles Superior Court
civil action No. 590631, it was further agreed the sum $4,000., will be
paid from the $6,600., deposited by Carl Francis Baker in Escrow 3-2852
with the Taft, California branch Bank of America, it is further agreed
the Plaintiffs and each of them will deliver to said Escrow, concurrently
with said payment, an acknowledged 'SATISFACTION OF AGREEMENT TO

had not agreed to such terms, the said plaintiffs would have prepared a judgment long ago and the Court now shows his Honor would have signed it. . . . That affiant has filed an action for damages against CLAUDE F. BAKER, ORAN W. PALMER, STEPHEN E. WALL and JOHNSTON, BAKER & PALMER a copartnership, in Los Angeles Superior Court, civil number 712871, that a motion made by ARTHUR O. ARAGON to dismiss affiant's complaint is now pending, hearing is set for June 22, 1959, and affiant believes is dependent upon the result of this instant motion in action 649213."

After argument, the court denied the motion for an order setting aside the judgment.

The attack of the appellant upon the right of Mr. Aragon to appear on behalf of the plaintiffs with respect to both motions is without merit. He did not appear as a substitute for the attorneys theretofore of record for the plaintiffs but only as an associate of attorneys who were of record.

As stated in *Wells Fargo & Co.* v. *City & County of San Francisco*, 25 Cal.2d 37, at page 43 [152 P.2d 625]: "The requirements of a substitution as prescribed in sections 284 and 285 of the Code of Civil Procedure are not applicable unless the associated attorney attempts to act as the sole attorney rather than as an associated attorney and to convert his association into a substitution for the attorney of record."

It is clear from the record as it has been set forth herein that the appellant consented to the disposition of the case which is embodied in the judgment. Although it was contemplated that all parties would sign the transcript of the proceedings as a precautionary measure to avoid future misunderstandings, the trial court was justified in reaching the conclusion that the parties understood that they had made a definite and complete agreement, the binding effect of which was not conditional upon its being reduced to written form and subscribed by them. (See *Clarke* v. *Fiedler*, 44 Cal.App.

---

PAY CLAIMED FEES' signed by each of the Plaintiffs, each party to pay it's [*sic*] own costs."

Such record also contains a "SATISFACTION OF AGREEMENT TO PAY CLAIMED FEES" executed by the plaintiffs, the body of which is as follows: "To THE CLERK OF THE ABOVE ENTITLED COURT: Payment having been made, you are hereby authorized and directed to enter, and we hereby acknowledge Full Satisfaction of AGREEMENT TO PAY CLAIMED FEES, in the above entitled action, now dismissed."

Each document was in the form required by rule 1, Rules for the Superior Courts. Both were filed with the clerk of the superior court on August 18, 1958.

2d 838, 846 [113 P.2d 275]; *Empire Steel Bldgs. Co.* v. *Harvey Mach. Co.*, 122 Cal.App.2d 411, 415 [265 P.2d 32]; *J. A. Folger & Co.* v. *Williamson,*. 129 Cal.App.2d 184, 190 [276 P.2d 645].) As stated in comment b to section 26 of the Restatement of the Law of Contracts: "The matter may be put in this way: If the parties indicate that the expected document is to be a mere 'memorial' of operative facts already existing, its non-existence does not prevent those facts from having their normal legal operation."

There is no requirement in the law that such an agreement, which is reached under the circumstances here involved, be in writing. A similar situation was presented in *Cathcart* v. *Gregory,* 45 Cal.App.2d 179 [113 P.2d 894]. That case involved an appeal from a judgment entered on a stipulation of counsel for the respective parties made in open court in the presence of their clients and taken down by the court reporter, but not reduced to writing and filed with the clerk and not entered at length on the minutes of the court. The plaintiff was in court when the stipulation was stated and made no objection to any of its terms for several months. The defendants acted in reliance upon the stipulation and, upon the failure of the plaintiff to furnish certain property descriptions, one of them had a survey made. The plaintiff discharged her attorneys, engaged new counsel and made a motion to be relieved from the stipulation. The motion was denied and a judgment was entered pursuant to the stipulation. The court said, at page 186: "Plaintiff contends that the trial judge committed prejudicial error in refusing to relieve her from the stipulation of her counsel and in entering judgment on that stipulation because section 283 of the Code of Civil Procedure provides that 'An attorney and counselor shall have authority: 1. To bind his client in any of the steps of an action or proceeding by his agreement filed with the clerk, or entered upon the minutes of the court, and not otherwise; . . .' She argues that the oral stipulation made in court was not intended to represent the final agreement of the parties; that it was only intended to serve as a memorandum to be used in drawing a final agreement settling the controversy and was intended to be subject to modifications; that as there was no agreement filed with the clerk of the court and as the stipulation was not entered on the minutes of the court it was not binding upon her and could not be enforced.

"Defendants argue that the stipulation was complete in every particular and meticulously set forth every detail of the compromise of the case according to the exact agreement of the parties; that it was taken down in shorthand by the court reporter who later transcribed his notes; that it was referred to in the minutes of the court and thereby virtually incorporated in those minutes; that it was acted upon by the trial judge and by the parties and therefore became a binding and enforceable agreement."

The court in the Cathcart case quoted from *Webster* v. *Webster*, 216 Cal. 485 [14 P.2d 522], and concluded its opinion as follows (pp. 187-188) : "We believe the facts of the instant case clearly bring it within the rule thus announced. There can be no question that the stipulation was actually entered into by counsel in open court. There can be no question of its exact terms, character and effect because it was taken down by the reporter who transcribed his notes. It was acted on by the court and the parties, and to this extent became an executed and not an executory contract. Under these circumstances and the authorities cited we cannot conclude there was any abuse of discretion on the part of the trial judge in denying plaintiff's motion to be relieved from the stipulation and in entering judgment upon it."

A more recent case which discusses the matter of the acquiescence of a litigant in a stipulation stated in open court is *Justice* v. *Oroville-Wyandotte Irr. Dist.*, 112 Cal.App.2d 516 [246 P.2d 134]. In that case, the appeal was by the plaintiffs from a judgment in favor of the defendants and from an order denying the plaintiffs' motion to vacate and set aside the judgment. The judgment was based upon an oral stipulation therefor in open court which was stated by counsel for the plaintiffs. The plaintiffs were in the courtroom while their attorney dictated such stipulation into the record and expressed no dissatisfaction. One of the grounds upon which the motion to vacate the judgment was made was that the stipulation was without the consent of the plaintiffs. The court said, at page 519 : "Thus the question for determination is not the extent of the authority of Mr. Manwell to bind his clients, but solely whether or not plaintiffs consented to the stipulation. And as to this question the record before us is wholly barren of any showing by plaintiffs of any dissent on their part. To the contrary, the record clearly shows full knowledge of the discussions looking towards a compromise

which began with their court appearance on April 30th and ended with their complete acquiescence and consent to the stipulation placed in the record on May 2d.

"Under such facts and circumstances it can not be said that the trial court abused its discretion in denying the motion to vacate the judgment." (See also *Johnson* v. *Johnson,* 117 Cal.App. 145, 147 [3 P.2d 587] ; *Witaschek* v. *Witaschek,* 56 Cal.App.2d 277, 283-284 [132 P.2d 600].)

It is to be noted that in his motion made after the judgment had been entered, the appellant made a claim that he was subjected to duress with respect to his consent to the stipulation in that the trial judge informed him that he would have to bear the expense of a daily transcript if the case proceeded. The court would, of course, have no right to impose such a condition upon the appellant's right to have a trial on the merits. But such assertion was not made in the affidavit of the appellant filed prior to the entry of the judgment. The trial judge was in a position to know whether the affidavit filed in support of the second motion correctly reflected any statements made by him and to determine the weight to be given to that portion thereof upon which the appellant based his claim of duress. (See *Bastajian* v. *Brown,* 19 Cal.2d 209, 215 [120 P.2d 9].)

As stated in *People* v. *Bannister,* 153 Cal.App.2d 480, at page 484 [314 P.2d 577] : "The rule that a trial judge is not required to accept as true the sworn testimony of a witness, even in the absence of evidence directly contradicting it, applies to affidavits." Moreover, as an indication of the weight the appellant attaches to this matter, it is to be noted that, while he mentions it in his statement of facts in his opening brief, he makes no argument therein with respect thereto.

While the court could have relieved the appellant of his stipulation in the exercise of its discretion when he raised an issue with respect thereto prior to the entry of the judgment (*Winn* v. *Winn,* 143 Cal.App.2d 184, 189-190 [299 P.2d 721]), the failure of the court to do so was not an abuse of discretion in the light of the record herein.

It appears from the briefs of the appellant as well as from his affidavit that there was an apparent purpose for the request for entry of the judgment *nunc pro tunc* as of July 18, 1958. In his affidavit in opposition thereto, the appellant makes reference to a new action which he had filed against the plaintiffs in the present action and Stephen E. Wall and indicates his belief that such a judgment in the present action

would bar his proceeding with the new action.[5] However, the affidavit of Mr. Wall appears to contain no substantial factual basis for such entry *nunc pro tunc*, particularly since counsel for the plaintiffs were ordered to prepare the judgment and no sound excuse for their delay in doing so for such a long period of time was offered. Moreover, that affidavit states no purpose to be served by such entry. ▇ The applicable law is stated in *Wells* v. *Coca Cola Bottling Co.*, 140 Cal.App.2d 218, at pages 221-222 [294 P.2d 955] : ''In *Fox* v. *Hale & Norcross Silver Min. Co.*, 108 Cal. 478 [41 P. 328], it was pointed out that the authority of a court to order the *nunc pro tunc* entry of a judgment is inherent in the court and is to be exercised for the purpose of doing justice between the parties; that if the cause has been tried and finally submitted the rights of the parties are to be determined as they existed at the time of such submission; and that the decision which the parties have invoked the court to make is not necessarily the statutory and technical decision, but is the final determination of the rights of the parties. ▇ While it was pointed out that a court will always exercise this authority when it is apparent that the delay in entering judgment is that of the court and is not owing to any fault of the party making the application, it is further stated that 'a *nunc pro tunc* order should be granted or refused as justice may require in view of the circumstances of the particular case.' Similar principles are pointed out in *Norton* v. *City of Pomona*, 5 Cal.2d 54 [53 P.2d 952]. In *Leavitt* v. *Gibson*, 3 Cal.2d 90 [43 P.2d 1091],

---

[5] In his reply brief, the appellant states that in the new action, the motion to dismiss the complaint under the provisions of section 437c of the Code of Civil Procedure was granted on June 22, 1959. He further states that his appeal in that matter was dismissed under Rule 2 of the Rules on Appeal on December 10, 1959. The record on appeal in that case (Civ. No. 24192) of which we take judicial notice (see *Watson* v. *Los Altos School Dist.*, 149 Cal.App.2d 768, 772 [308 P.2d 872]), shows that the motion made pursuant to section 437c of the Code of Civil Procedure was based on two grounds: (1) that the judgment, which is involved in the present appeal, determined the matters alleged in the complaint in the new action under the doctrine of res judicata, and (2) that the cause of action alleged was barred by the statute of limitations. The motion was heard and granted on June 22, 1959. The demurrer to the complaint was sustained without leave to amend. The present appeal from the judgment was pending at the time the motion was heard and granted, but on this appeal we are not called upon to determine the merits of the first ground of that motion. (But see *Robinson* v. *El Centro Grain Co.*, 133 Cal.App. 567, 573 [24 P.2d 554]; 29 Cal.Jur.2d, Judgments, § 232.) Entry *nunc pro tunc* of the judgment in the present case did not, of course, have the effect of cutting off the right to appeal. (See *Phillips* v. *Phillips*, 41 Cal.2d 869, 875 [264 P.2d 926].)

the court approved the general test, '. . . was the cause in such condition at the date to which the judgment is to relate back that a final judgment could then have been entered?' "

But even if it be assumed that the showing made was not sufficient to justify the entry of the judgment *nunc pro tunc*, in any event the respondents were entitled to the entry of the judgment as of the time when it was actually entered. That judgment, if not final at the time the defendants in the new action were required to file their answer, could have been pleaded as a defense therein in the nature of res judicata by a supplemental answer after it had become final. (*Bennett* v. *Forrest*, 24 Cal.2d 485, 493 [150 P.2d 416]; see *Lord* v. *Garland*, 27 Cal.2d 840, 851 [168 P.2d 5]; 2 Witkin, California Procedure, pp. 1551, 1630.) Moreover, resort could be had to the provisions of section 437c of the Code of Civil Procedure when that judgment had reached the stage of finality. (See *Pianka* v. *State*, 46 Cal.2d 208, 211-212 [293 P.2d 458].) The extent to which the issues raised in the new action had been determined by the judgment would then, of course, be a matter for decision by the court in accordance with the applicable law. (See *Lamb* v. *Herndon*, 97 Cal.App. 193, 202-203 [275 P. 503]; *Aspeitia* v. *California Trust Co.*, 158 Cal.App.2d 150, 153 [322 P.2d 265]; *Gagnon Co., Inc.* v. *Nevada Desert Inn*, 45 Cal.2d 448, 455 [289 P.2d 466].) Consequently, the appellant is not in a position to establish any prejudicial error because of the entry *nunc pro tunc*. (*Cf. Juneau Spruce Corp.* v. *International L. & W. Union*, 119 Cal.App.2d 144, 146 [259 P.2d 23].) If there was any error in the granting of the motion for summary judgment in the new action, a matter which we do not decide, the appellant lost his right to a review thereof by his failure, in that action, to comply with the rules governing appeals.

The judgment and order are affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied August 15, 1960, and appellant's petition for a hearing by the Supreme Court was denied September 20, 1960.