[Civ. No. 198.   Fifth Dist.   May 20, 1963.]

REYNOLD LINDER, Plaintiff and Respondent, v. MORRIS COOLEY, Defendant and Appellant.

Orly O. Davis, Louis L. LaRose, Oren, McCartney & Sells and Donald Oren for Defendant and Appellant.

Joseph L. Soares, Russell B. Henry and George Simpson for Plaintiff and Respondent.

BROWN (R. M.), J.—This is an appeal by the defendant, Morris Cooley, from a judgment in favor of the plaintiff, Reynold Linder.

The action is based on a written contract dated October 12, 1960, between plaintiff and his then partner, one William J. Cairns, producers of charcoal by the kiln method, and the defendant, a producer and wholesaler of charcoal. The agreement, in material part, provided that Linder and Cairns would sell and defendant would buy all charcoal produced

by Linder and Cairns for the period of one year at the price of $43.50 per ton. Linder and Cairns agreed to load the charcoal on a conveyance of Cooley, and Cooley agreed to provide such conveyance and haul at his expense. If Linder and Cairns failed to deliver 50 tons of charcoal during any 30-day period, Cooley had the option to deem the contract breached or he could cancel without further liability. Cairns is not herein involved.

During the 30-day period from December 15, 1960, to January 15, 1961, plaintiff delivered 37.2 tons of charcoal which fell short of the contractual minimum quantity. Thereafter and until June 15, 1961, he delivered monthly quantities of charcoal which defendant accepted and paid for. On June 15, 1961, defendant advised plaintiff that he would not take any further deliveries of charcoal.

Plaintiff sued defendant for damages for loss of anticipated profits. The complaint alleged a total breach by defendant on June 15, 1961, and alleged performance on the part of plaintiff except insofar as performance was prevented by defendant's failure to have trucks available at the plaintiff's kilns when the charcoal was ready for loading. The defense was that plaintiff breached the contract on January 15, 1961, by failing to deliver 50 tons of charcoal during the preceding 30-day period; and that defendant had exercised his option and cancelled and terminated the contract as of that date. Defendant also cross-complained for damages for plaintiff's alleged breach. Plaintiff's answer to the cross-complaint set up the affirmative defense of justification or excuse on the theory of prevention of performance by defendant's failure to have trucks available timely when notified that the charcoal was ready. The pretrial order did not enlarge the issues framed by the pleadings. At the time of trial only two amendments to the pleadings were requested and permitted by the court. At the inception of trial defendant's pleadings and the pretrial order were amended to correct the date of plaintiff's alleged breach. After the evidence was in, plaintiff's pleadings and the pretrial order were amended to include as an additional issue that defendant had waived any breach on the part of plaintiff by continuing his own performance under the contract until June 15, 1961. No request was ever made by plaintiff to amend his pleadings or the pretrial order so as to show any breach on the part of defendant other than the total breach of June 15, 1961, as pleaded in his complaint.

After trial the jury brought in verdicts against defendant on his cross-complaint and in favor of plaintiff on his complaint in the sum of $7,540.

Defendant's motions for judgment notwithstanding the verdict and for new trial were denied. The following language appears in the order of denial:

"Defendant may not without objection permit a case to be tried on a theory beyond the pleadings and pre-trial order and then claim the unfavorable verdict as error.

"Let the pleadings and pre-trial order be deemed to have been amended to conform to the proof."

From the judgment entered on the verdict, defendant appeals on the grounds of (1) error in giving an instruction, and (2) insufficiency of the evidence.

The instruction challenged by defendant is predicated in substantial part upon language taken from the decision in *Unruh* v. *Smith,* 123 Cal.App.2d 431 [267 P.2d 52]. We do not deem it necessary to here analyze the instruction or the charge to the jury as a whole for the purpose of showing that the interpretation placed thereon by defendant cannot be sustained, for the reason that defendant waived any error therein. The record discloses that after the jury had been charged and retired for the purpose of deliberation, the following colloquy between court and counsel took place:

"The Court: Gentlemen, in chambers before resuming this afternoon counsel indicated that they were each satisfied with the proposed instructions that the Court stated it intended to read. The Court wishes to inquire if you are still satisfied with the instructions for the purpose of the record. I take it that you are, Mr. Soares?

"Mr. Soares: [Counsel for plaintiff] Well, I didn't think there was enough instructions on waiver. I didn't—— I am satisfied with them, I am just commenting on them. I didn't think there was adequate to cover.

"Mr. LaRose: [Counsel for defendant] We will stipulate that if there is any error in the instructions to it having been waived by us."

It is clear from the court's comment that counsel for defendant had any opportunity in chambers to complain of the instruction before it was given to the jury and had a second opportunity, in open court, to complain immediately after the jury was charged. He failed to do so but instead expressly waived any error.

On this appeal, defendant makes several arguments in an

attempt to evade the effect of trial counsel's express waiver. It is argued that an attorney's authority does not include the right to waive errors in instructions; that the automatic exception to instructions given provided by section 647 of the Code of Civil Procedure is available; that the statement was couched in language of stipulation and since both counsel did not assent, it constituted a mere ineffectual offer to stipulate; that, even if the statement is construed to be a stipulation of waiver, it is not binding on defendant because it was neither filed nor entered upon the minutes of the clerk (Code Civ. Proc., § 283) ; and that, in any event, a waiver of errors of law in instructions is tantamount to a waiver of the right to appeal, and a purported oral waiver of a client's right to appeal, not supported by consideration, is not binding. These arguments may be divided into two classifications: those relating to whether the subject matter of the waiver falls within the authority of an attorney, and those relating to the manner and form of exercise by the attorney of his authority. An attorney is fitted by his education, training and experience, which generally a client lacks, to propose, or object, or waive objection to, instructions which the court intends to give and that function is necessarily within the implied authority of the attorney. Code of Civil Procedure section 607a imposes upon *counsel* for the respective litigants the duty of preparing and submitting to the court proposed instructions to the jury and imposes upon the court the duty, upon request, to advise *counsel* of all instructions to be given. In *Westover* v. *City of Los Angeles,* 20 Cal.2d 635 [128 P.2d 350], the trial court gave instructions at the inception of trial on principles of law which would be involved in the case. On appeal defendant city charged error in the giving of "pretrial" instructions. At page 639, the court said:

"In view of the fact that *counsel* for the city stated 'the city . . . has no objection to your honor stating at the present time the law as to the case to be applied by the jury,' the city is not now in position to challenge the propriety of giving such instructions." (Italics added.)

The Supreme Court had no difficulty in that case in finding *counsel*'s waiver in respect to the giving of instructions binding on the defendant city.

Turning to defendant's argument relating to the form of the waiver, it has long been established in this state that section 283 of the Code of Civil Procedure ". . . does not invalidate an oral stipulation made in open court." (*Lyons* v.

*Lyons,* 190 Cal.App.2d 788, 790 [12 Cal.Rptr. 349]; *Continental Bldg. etc. Assn.* v. *Woolf,* 12 Cal.App. 725, 730 [108 P. 729].)

In *Webster* v. *Webster,* 216 Cal. 485 [14 P.2d 522] at page 489, the Supreme Court said: "Such a stipulation made in open court constitutes 'not only an agreement between the parties but also between them and the court, which the latter is bound to enforce, not only for the benefit of those interested, but for the protection of its own honor and dignity.' "

Substantially the same language appears in *Barendregt* v. *Downing,* 175 Cal.App.2d 733, 736 [346 P.2d 870].

In *Reclamation District* v. *Hamilton,* 112 Cal. 603, 610 [44 P. 1074], it was said that if the party admits making the verbal stipulation, it is as binding upon him as if it had been entered in the minutes.

And in *Smith* v. *Whittier,* 95 Cal. 279, 287 [30 P. 529], section 283 of the Code of Civil Procedure was construed to mean that when an attorney enters into an agreement for the purpose of binding his client, ". . . there shall be such a record thereof as will preclude any question concerning its character or effect, and that the extent of the agreement may be ascertained by the record,——if oral, that it shall be entered in the minutes, and if written, that it shall be filed with the clerk."

In *Cathcart* v. *Gregory,* 45 Cal.App.2d 179 [113 P.2d 894], and in *Johnston, Baker & Palmer* v. *Record Machine & Tool Co.,* 183 Cal.App.2d 200 [6 Cal.Rptr. 847], it was held that stipulations of counsel made in open court in the presence of their clients and taken down by the court reporter, but neither reduced to writing nor entered on the minutes of the clerk, bound the litigants.

In our case the stipulation was made in open court, taken down by the court reporter who transcribed her notes, acted upon by the adverse counsel and the court, and the fact that it was, in fact, made is not questioned. It therefore falls within the ambit of the authorities hereinabove cited and is binding upon defendant.

Defendant next contends that the amount awarded as damages for loss of profits exceeded the maximum which the evidence demonstrated plaintiff could have earned upon full performance of the remainder of the contract. This contention is sound.

Defendant first snipes one shot with the total recovery as

his target. He attempts to apply the "new business venture" rule so as to show that plaintiff's anticipated profits were too uncertain and speculative to sustain any recovery at all.

■ The true rule to be here applied is that damages for the loss of anticipated profits are recoverable where their occurrence and extent is made reasonably certain by the evidence (*Grupe* v. *Glick,* 26 Cal.2d 680, 693 [160 P.2d 832], and cases therein cited). ■ All that is required is that prospective damages be capable of sufficiently reasonably accurate computation so as not to violate the rule against uncertain, speculative and remote damages (*Milton* v. *Hudson Sales Corp.,* 152 Cal.App.2d 418, 434 [313 P.2d 936]). In *Nelson* v. *Reisner,* 51 Cal.2d 161, 171-172 [331 P.2d 17], quoting from *James* v. *Herbert,* 149 Cal.App.2d 741, 749 [309 P.2d 91], the court said: " 'Damages consisting of the loss of anticipated profits need not be established with certainty. It is sufficient that it be shown as a reasonable probability that the profits would have been earned except for the breach of contract.' "

■ At the time of contracting plaintiff's business was a new venture. But the record discloses ample evidence that defendant totally breached the contract on June 15, 1961, that there then remained approximately 4 months of the contractual term, and that the maximum production capacity of plaintiff's kilns was 90 tons of charcoal per month. There was evidence, corroborated in every detail, of the expenses of production, and that, on the basis of a 90-ton per month production at the contract price of $43.50 per ton, plaintiff's profits would have been $14.50 per ton. By the contract defendant obligated himself to purchase plaintiff's entire output. This evidence provides a satisfactory and sufficiently accurate yardstick by which plaintiff's anticipated profits for the unexpired period of the contract may be measured. It is clear that defendant's breach deprived plaintiff of profits calculated at $14.50 per ton for his potential production of 360 tons or a total of $5,220.

■ We are thus brought to a consideration of the actual amount of the verdict. The jury assessed damages of $7,540 or the sum of $2,320 in excess of the amount the evidence, viewed in the light most favorable to plaintiff, will sustain. On appeal, plaintiff insists that the case was tried on the theory that defendant had breached the contract sometime early in the year of 1961; that evidence was adduced on the theory of partial breaches by defendant prior to June 15, 1961, and

the jury was justified in awarding compensatory damages for those breaches.

There is, however, no issue of partial prior breaches raised by the pleadings, either as originally drafted or as amended at time of trial. A perusal of the entire record of the trial clearly shows that plaintiff at no time claimed damages for partial breach, or any damages other than for loss of anticipated profits after defendant's total breach of June 15, 1961. True, plaintiff's evidence showed that, throughout the term of the contract, defendant failed to make trucks available at the kilns promptly; that the kilns could not be unloaded, sometimes for three or four days; that the nonavailability of trucks when the charcoal was ready tied up the kilns and impeded plaintiff's production; and that plaintiff had made frequent complaint thereof to defendant, without avail. This evidence is pertinent to the issue raised by the pleadings of whether plaintiff's own breach by his failure to deliver at least 50 tons of charcoal during the 30-day period ending January 15, 1961, was excused or justified by prevention of performance by the conduct of defendant. It was incumbent upon plaintiff to establish excuse or justification of his defective performance not only to sustain any recovery on his complaint but to defeat the cross-complaint interposed by defendant. It is settled in California that the theory of the case by trial doctrine will not be invoked where evidence pertinent to an issue outside the pleadings is relevant to an issue which is pleaded and is before the court (*Lein* v. *Parkin,* 49 Cal.2d 397, 400-401 [318 P.2d 1]; *Miller* v. *Peters,* 37 Cal.2d 89, 93 [230 P.2d 803]).

The theory of the case by trial doctrine is ". . . subject to the qualification that evidence which is relevant to an issue actually raised by the pleadings cannot be considered as authorizing the determination of an issue not presented." (*Freeman* v. *Gray-Cowan, Inc.,* 219 Cal. 85, 87 [25 P.2d 415].) The implied finding of the jury that plaintiff was entitled to compensatory damages for breaches occurring prior to June 15, 1961, was not responsive, either to any issue framed by the pleadings and pretrial order as amended at time of trial, or to the theory upon which the case was tried.

It is not necessary to consider the form, sufficiency or timeliness of the order *sua sponte* of the trial court made at the hearing on the motion for new trial purporting to amend the pleadings and pretrial order to conform to proof for, as has been shown, the reason ascribed to such order fails. Legal basis therefor wanting, the order was erroneous.

For the reasons herein stated, the judgment is modified by striking therefrom the figures $7,540, and inserting in lieu thereof the figures $5,220. As so modified the judgment is affirmed. Appellant to recover costs on appeal.

Conley, P. J., and Stone, J., concurred.